JOURNAL ENTRY AND OPINION
{¶ 1} Defendants Bruce and Linda DiMarco (collectively appellants) appeal from the trial court's decision awarding $206,342.97 to plaintiff Prouse, Dash Crouch, LLP (Prouse), a Canadian law firm, for breach of contract, and the trial court's declaration that real property located in Parma, Ohio was fraudulently transferred from defendant Bruce DiMarco (Bruce) to his wife, defendant Linda DiMarco (Linda). After reviewing the facts of the case and pertinent law, we reverse.
 I. {¶ 2} In the summer of 2000, Bruce was arrested in Ontario, Canada upon the request of the United States of America for his extradition to face stock manipulation and wire fraud charges. At the time of his arrest, Bruce was an American citizen who formerly resided with his wife Linda at 5810 Gilbert Avenue, Parma, Ohio (Parma property). On June 15, 1999, before his arrest, Bruce transferred the title of the property to Linda; the deed was recorded on July 27, 1999. It was around this same time, late July of 1999, that Bruce learned he was the subject of a Securities and Exchange Commission investigation, and he left the United States for Canada.
 {¶ 3} In the fall of 2000, Linda contacted Prouse to represent Bruce in a civil matter stemming from an alleged assault he suffered while in the Canadian authorities' custody. Canadian solicitor and barrister William Gilmour (Gilmour) of Prouse agreed to the to the representation. Upon the request of Bruce and Linda, Prouse agreed to represent appellants in a number of other matters, including a breach of recognizance charge, an immigration bail hearing, the extradition hearing, a habeas corpus application, and intellectual property and commercial projects for Linda's corporation, Pacific Blue Productions (Pacific Blue).
 {¶ 4} There was no written contract between Prouse and appellants; however, the court found that there was an oral agreement that Prouse would charge appellants an hourly rate for Gilmour's services. All payments to Prouse were made by Linda or Pacific Blue, with the exception of three: one by Linda's mother; one by an account held jointly by Bruce and his deceased mother; and one by Chuck Arnold, which was subsequently dishonored. As appellants' outstanding balances with Prouse grew, Bruce told Gilmour not to worry, that Prouse would be paid from the proceeds of "his house" in Ohio. Although Bruce referred to the house as his, he eventually told Gilmour that he transferred the property to Linda to protect it from attachment in a claim his former wife had against him for $100,000 in support arrears.
 {¶ 5} By 2003, appellants owed Prouse $250,785.71 in Canadian dollars for services rendered. On April 11, 2003, Prouse filed suit in Ohio for breach of contract, fraud and fraudulent transfer of real property. On July 2, 2003, the court entered an order of attachment concerning the Parma property, pursuant to R.C. 2715.01. Prouse's claims were tried to the court, and on March 31, 2005, judgment was entered against appellants, jointly and severally, for breach of contract in the amount of $206,342.97 U.S. dollars. The court also found that the Parma property was fraudulently transferred from Bruce to Linda to defeat creditors and declared the transfer null and void. The court entered judgment in favor of appellants on the fraud claim, finding that although Prouse's evidence proved appellants committed a fraud, no independent damages were shown.
 II. {¶ 6} In their first assignment of error, appellants argue that they "were denied due process of law when the court exercised personal jurisdiction in order to enter a judgment in personam where defendants were not residents of Ohio, and had conducted no activity in Ohio concerning plaintiff's claim for breach of contract."
 {¶ 7} We review a trial court's determination of whether personal jurisdiction exists under a de novo standard. McIntyrev. Rice, Cuyahoga App. No. 81339, 2003-Ohio-3940. "In deciding if an Ohio court has personal jurisdiction over a nonresident defendant, we must determine (1) whether Ohio's long-arm statute, R.C. 2307.382, and the applicable Rule of Civil Procedure, Civ.R. 4.3(A), confer personal jurisdiction and, if so, (2) whether granting jurisdiction under the statute and rule would deprive the nonresident defendant of the right to due process of law under the Fourteenth Amendment to the United States Constitution." State ex rel. Toma v. Corrigan (2001),92 Ohio St.3d 589, 592. See, also, U.S. Sprint Communications Co., L.P.v. Mr. K's Foods, Inc. (1994), 68 Ohio St.3d 181.
 {¶ 8} As to the first prong of the personal jurisdiction test, R.C. 2307.382 provides in pertinent part, "(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: * * * (8) Having an interest in, using, or possessing real property in this state * * *." Additionally, the relevant parts of Civ.R. 4.3, which are substantially similar to R.C. 2307.382, provide as follows: "(A) When service permitted — service of process may be made outside of this state, * * * upon a person who * * * is a nonresident of this state. `Person' includes an individual * * * who * * * has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's: * * * (6) Having an interest in, using, or possessing real property in this state * * *."
 {¶ 9} The second part of the personal jurisdiction analysis deals with satisfying the demands of due process. "[D]ue process requires only that in order to subject a defendant to a judgmentin personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v.Washington (1945), 326 U.S. 310, 316, citing Milliken v. Meyer
(1940), 311 U.S. 457, 463. The Supreme Court further narrowed its definition of `minimum contacts' in Hanson v. Denckla (1958),357 U.S. 235, 253, when it held that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws." What is critical to the due process analysis as it relates to exercising personal jurisdiction "is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there."World-Wide Volkswagen Corp. v. Woodson (1980), 444 U.S. 286,297.
 {¶ 10} Appellants argue that the only nexus they had to Ohio was the Parma property, and that according to R.C. 2307.382(C), only a cause of action arising from this property may be asserted against him. Prouse's claim for breach of contract, which essentially boils down to nonpayment, is unrelated to and does not arise from, appellant's real property in Ohio. Appellants further argue that the breach of contract issue should have been decided by a Canadian court and that if Prouse won a favorable judgment, it could attempt to attach the Parma property to satisfy the Canadian judgment.
 {¶ 11} Prouse, on the other hand, argues that the Parma property became a term of the contract for legal services between the parties, specifically as it related to payment of the outstanding balance due Prouse. Prouse argues that Bruce repeatedly assured it of his ability to pay from the proceeds of the Parma property, and because of this assurance, Prouse continued to represent appellants despite them failing to pay their invoices. Prouse further argues that the fraudulent transfer occurred in Ohio and, as such, Bruce sought the benefits and protections of Ohio laws, thus satisfying minimum contacts. The record establishes that Gilmour traveled to Ohio numerous times, upon appellants' request, to interview witnesses, take photographs of the Parma property and inventory various chattels located inside the house. At one point, Gilmour requested a mortgage on the Parma property to secure payment on appellants' account. However, appellants refused this request. The court also found that Prouse believed that the Parma property, as well as personal property located within, "constitute the only significant assets upon which to execute and pay a judgment obtained against" appellants.
 {¶ 12} A review of Ohio law shows that few cases have determined long-arm jurisdiction based solely on ownership of real property in the forum state. One Ohio legal authority states that Civ.R. 4.3(A)(6) "is indefinite in its long-arm reach in light of the fact that there have been very few cases in any state which interpret its meaning. In short, subsection (6) is a `sleeper.'" 4-150 Ohio Civil Practice (2005), Section 150.38.
 {¶ 13} Most recently, the Tenth District Court of Appeals of Ohio held that the trial court did not have personal jurisdiction over a party, despite his owning real estate in Ohio, in an action for legal separation where the spouse sought an equitable division of the couple's assets, including the Ohio property.Kvinta v. Kvinta (Feb. 20, 2000), Franklin App. No. 99AP-508. "Although appellee has sought a division of property, the action is not one arising from appellant's interest in, possession, or use of the real property in Mansfield, Ohio." Id. See, also,Leonesio v. Carter (May 11, 1992), Butler App. No. CA91-08-136 (holding that the "mere presence of property in a state does not establish a sufficient relationship between the owner of the property and the state to support the exercise of jurisdiction over an unrelated cause of action.")
 {¶ 14} The facts of Bank of Nova Scotia v. McGregor (Dec. 24, 1991), Fairfield App. No. 19-CA-91 are remarkably similar to the instant case. In Bank of Nova Scotia, McGregor left Ohio in 1987 and moved to Ontario, Canada after being indicted in federal court for fraud, illegal transportation of securities and wire fraud. While residing in Canada, McGregor executed a promissory note to the Bank of Nova Scotia. When McGregor failed to pay on the note, the bank obtained a default judgment against him in both the District Court of Ontario and the Fairfield County Common Pleas Court in Ohio. A judgment lien in favor of the bank was filed on real real property that McGregor and his wife owned in Ohio. The appellate court ruled that the trial court was without personal jurisdiction over McGregor when it rendered and filed the 1988 judgment lien. "There is no nexus between the instant cause of action, a garden variety default action on an unsecured signature loan, and McGregor's interest in the subject real property in Ohio. Obviously, had the loan been secured by the subject real property, appellee could make a direct attack on the real estate in question." Id.
 {¶ 15} In the instant case, Prouse argues that the Parma property became a term of the contract for legal services provided to appellants when they told Gilmour that the house would be used to pay the balance on the contract. However, verbal assurances do not create an interest in real property sufficient enough to make that property part of an otherwise unrelated contract. Accordingly, there is no connection between Prouse's claims and appellants' interest in the Ohio property. The trial court lacked personal jurisdiction over appellants to hear claims against them. See, also, Lincoln Tavern, Inc. v. Snader (1956),165 Ohio St. 61, 68 (holding that an attachment of real property "is a provisional remedy; an ancillary proceeding which must be appended to a principal action and whose very validity must necessarily depend upon the validity of the commencement of the principal action"). Because the court lacked personal jurisdiction to hear the instant case, appellants' first assignment of error is sustained.
 {¶ 16} Pursuant to App.R. 12(A)(1)(c), appellants' remaining assignments of error are made moot by our ruling on the first assignment of error.
 {¶ 17} We reverse the judgment of the trial court and remand with directions to vacate all orders and entries regarding appellants.
 {¶ 18} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellants recover of appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, J., concurs;
 Cooney, P.J., concurs in part and dissents in part. (seeseparate concurring and dissenting opinion.)
 CONCURRING AND DISSENTING OPINION