**Snelling v. Gardner**
*[Cite as 6 AOA 322]*

*Case No. 89AP-1046*
*Franklin County, (10th)*
*Decided August 23, 1990*

*Thomas M. Tyack & Associates Co., L.P.A., and Margaret L. Blackmore, for Petitioner-Appellant.*

*John E. Palcich, for Respondent-Appellee.*

WHITESIDE, J.

Petitioner-appellant, Purity Snelling, appeals from a decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, denying petitioner's motion to register in Ohio a child support and custody order and to modify child support rendered in Tennessee. Five assignments of error are raised as follows

"1. The trial court abused its discretion by not granting petitioner-appellant an extension of the time period in which to file objections to the referee's report."

"2. The trial court erred when it found that respondent was a legal resident of Tennessee, and thus, an Ohio Court has no personal jurisdiction over respondent."

"3. The trial court erred when it found that there was no support order to register, by incorrectly equating an order contingently suspending support with no support order at all."

"4. The trial court erred when it found that O.R.C. Chapter 3115 (URESA) is not applicable to petitioner's action by assuming that once registered, a foreign support order is not subject to modification.

"5. The trial court erred when it found that the support action may not be certified pursuant to O.R.C. §3109.21 through 3109.37."

Petitioner and respondent-appellee, Gregory Gardner, are the natural parents of a six-year-old daughter who was born in Tennessee on March 7, 1984. The parties were never married. Pursuant to an order entered by a Tennessee court, respondent was granted visitation and was ordered to pay $50 weekly as child support. Petitioner thereafter moved to Columbus, Ohio, while respondent remained in Tennessee where he married and had a child.

On December 27, 1988, petitioner filed a petition in the Juvenile Branch of the Division of Domestic Relations of the Franklin County Court of Common Pleas requesting that the court certify the records of the Tennessee court in Ohio. Petitioner also filed a motion requesting the court, first, to register the Tennessee order of support pursuant to R.C. 3115.32 and, second, to set or modify child support in accordance with Ohio law. A hearing was held before a referee of the court, during which testimony was given by both parties regarding the question of respondent's residency in Ohio.

In his report, the referee found that respondent was not a resident of Ohio; that there was no support order from Tennessee in existence that could be registered or enforced in Ohio; that the matter did not fall within the scope of R.C. 3109.21, *et seq.*, Ohio's statutory adoption of the Uniform Child Custody Jurisdiction Act; and that there was no need or authority for Ohio to assume jurisdiction. The referee accordingly recommended that the court decline to take jurisdiction and that the petitioner's motion be overruled.

Petitioner thereafter filed objections to the referee's report. Respondent moved to strike the objections for lack of specificity, and petitioner responded with a memorandum in opposition, as well as a supplemental memorandum to the objections. The trial court granted respondent's motion to strike petitioner's objections to the referee's report and adopted the report of the referee in full, whereupon the instant appeal ensued.

Disposition of petitioner's first assignment of error, being directly affected by discussion of the subject assigned errors, will be dealt with last.

By her second assignment of error, petitioner argues that the trial court erred in holding that Ohio could not properly exercise personal jurisdiction over respondent. In his first finding of fact, the referee found that respondent was not a resident of Ohio, and this finding was adopted by the trial court. Petitioner argues that, even if respondent not be a full Ohio resident, the issue is primarily respondent's "minimum contacts" with Ohio, as that concept was defined in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, and its progeny. This contention presumably is based upon the lack of any requirement in R.C. 3115.32 that the obligor be a resident of the registering state, although the obligee is required to be.

Petitioner sought to register this action in Ohio pursuant to R.C. Chapter 3115, wherein Ohio has adopted the Uniform Reciprocal Enforcement of Support Act ("URESA"). R.C. 3115.32(B) permits an obligee to register a foreign support order in Ohio "in the manner, with the effect, and for the purposes provided in this section."

In the report submitted by the referee and adopted by the trial court, the following facts are set forth:

"1. *** The child was born in Murfreesboro, Tennessee. *** Respondent subsequently married his present wife, and their marital residence was in Tennessee until July 1988, at which time respondent, his wife and their daughter came to Columbus, Ohio, to visit and care for respondent's father who was ill and subsequently died.

"Respondent made numerous trips back and forth from Tennessee to Ohio from July 1988 to February 1989. He had ten to twelve appointments with his Columbus attorney, and he testified that he was helping to care for his ill father, his terminally ill mother and his grandfather who had suffered a heart attack. He stayed overnight with various friends and relatives, including his mother, his brother, and for a three-week period with petitioner, whom he had again impregnated. He paid for an abortion for petitioner. Respondent worked for a temporary employ-

324

ment agency in Columbus from November 12 to December 31, 1988. Although he admittedly spent a great deal of time in Columbus, he testified that after January 1989, he returned to his wife's new residence on Caroline Street, Murfreesboro, Tennessee, and has lived with his wife and daughter for the 1989 year-to-date. He registered for and received unemployment benefits from the State of Tennessee; has a Tennessee driver's license and Tennessee car plates; filed a joint federal income tax return for 1988 from Tennessee, and never intended to make Columbus anything but a place to stay while he was conducting family business. *** He did have mail, including his unemployment benefits, forwarded to his mother's Columbus address while he was here; and he listed that address as his own for purposes of the temporary employment agency jobs that he took here in Columbus."

Based on the foregoing, the trial court found that respondent is not a resident of Ohio and that Ohio would not assume jurisdiction over this matter.

The trial court, however, appears to have grounded its decision upon an assumption that respondent's residence is equivalent to respondent's domicile. Although the terms "residence" and "domicile" are frequently used interchangeably, they in fact are distinctly different, albeit related, concepts. See, e.g., *Larrick v. Walters* (1930), 39 Ohio App. 363; *Bd. of Education v. Dille* (1959), 109 Ohio App. 344. "Domicile" has most often been defined as a legal relationship between a person and a particular place which contemplates two factors: first, residence, at least for some period of time and, second, the intent to reside in that place permanently or at least indefinitely. *Hill v. Blumenberg* (1924), 19 Ohio App. 404, 409, quoting from *Pickering v. Winch* (1906), 48 Ore. 500; Black's Law Dictionary (4 Ed. 1979) 435-436.

Thus, "residence" is encompassed within the definition of "domicile." An important distinction, however, lies in the fact that, while a person can have only one domicile, he generally may have more than one residence. *Bd. of Education v. Dille, supra*; *Grant v. Jones* (1883), 39 Ohio St. 506, 515.

In order to determine whether respondent may have had multiple residences under the terms of URESA, it is useful to examine URESA's intent. It has been stated that the purpose of URESA is to provide an inexpensive, relatively simple and effective means whereby an obligor in one state can enforce the duties of support owed by an obligor in another state without necessarily having to leave the state. See 23 American Jurisprudence 2d, "Desertion and Nonsupport," Section 118. Effectively accomplishing that goal necessarily includes recognition of the fact that an obligor may seek to avoid responsibility for payment of support by establishing residential ties in several locations while not remaining in one location long enough to be served properly or for enforcement of support duties to be effectuated. Accordingly, granting any state in which an obligor has established residence jurisdiction over the obligor is vital to further the purposes of URESA.

In light of the extensive time respondent has spent in Ohio, the trial court erred in finding that respondent was not a resident of Ohio. Respondent's testimony indicates that, since July 1988, when respondent came to Columbus from Tennessee to attend his father's funeral, he has been in Columbus on at least five and as many as twelve separate occasions. During one of his trips, he lived with petitioner for approximately three weeks and was employed in Columbus for six weeks and was in Columbus at the time the petition herein was filed. He has stayed overnight at several different Columbus addresses; he used his sister's address in Columbus on a forwarding order with the post office on at least one occasion; he applied for employment in Columbus in February or March of 1989; he received his Tennessee unemployment benefits in Columbus; and he was generally in Columbus "quite often," by his own testimony. He testified he could not be specific as to the dates he was in Columbus "for the simple reason that I'm in and out of Columbus so much."

Additionally, petitioner testified that she saw respondent in Columbus nearly every weekend during January and February 1989, and that she saw his car at a Columbus address every night for approximately a week in March of 1989.

These facts establish that respondent resided in Ohio during the relevant time period. We do not hold that respondent was domiciled in Ohio, nor that Ohio was his *only* or even *primary* residence. We merely hold that, within the contemplation of URESA, respondent maintained a residence in Ohio and that the trial court could, therefore, rightfully assert jurisdiction over him in this matter.

If the issue be, as petitioner contends, respondent's "minimum contacts" with Ohio, then Ohio clearly has jurisdiction over him.

Given our holding that respondent's numerous contacts with Ohio compel the conclusion that he has established residence here, the same facts necessarily demonstrate that respondent has had minimum contacts with Ohio, as discussed in *International Shoe, supra.* The long-arm statute under which such analysis would fall, R.C. 2307.382, applies to nonresidents, and we have already held that respondent meets the "higher" standard of residence.

Moreover, respondent does not contend that he was not properly served. Although the record may not contain an indication of service other than a failed attempt at ordinary mail and a certified mail sticker which was not signed, respondent testified at the hearing that he received notice, apparently through certified mail service. This action was filed on December 27, 1988, at which time respondent, by his own admission, was employed in Columbus and was therefore a resident, albeit temporarily, of Ohio. Since service was obtained, jurisdiction in Ohio could be rightfully asserted.

Finally, the trial court found that Ohio has no compelling need to assume jurisdiction since respondent resides in Tennessee, and Tennessee has issued all previous orders in this case. However, the central purpose of URESA is to ensure that duties of support are enforced, even across state boundaries. Convenience to the obligor is not a consideration. The state of Ohio has an inherent interest in enforcing the duty of support owed by respondent to his child inasmuch as the child lives in Ohio, and it is Ohio which may be required to bear the burden of supporting the child if respondent fails to fulfill his legal duty to do so. It is the interest of the child in the support that is paramount, rather than that of respondent in having a forum convenient to him. Accordingly, the second assignment of error is well-taken.

By her third assignment of error, petitioner contends that the trial court erred in determining that there exists no present duty to pay child support from the Tennessee court to register in Ohio. The court based its finding on the language in an order dated July 13, 1988, from the Rutherford County Juvenile Court in Tennessee, which states, in pertinent part:

"*** In light of the prolonged consternation and difficulty between the parties, IT IS ORDERED that temporarily Gregory Gardner will pay no support for his child and *** [his child] will not have to visit with her father. In the event Purity Snelling can in the future demonstrate that reasonable and unsupervised visitation can be had with Gregory Gardner, the court should consider bringing about that visitation and setting an appropriate amount of child support."

The Tennessee court had previously ordered respondent to pay petitioner $50 per week as child support. However, based on the language in the July 13, 1988 order, wherein the Tennessee court ordered that respondent temporarily pay *no* support until it was demonstrated that visitation was possible, the trial court here determined that nothing existed to register or enforce.

"Support order" is defined in R.C. 3115.01(B) (16) as:

"*** [a]ny judgment, decree, or order of support in favor of an obligee, whether temporary or final, or subject to modification, revocation, or remission, regardless of the kind of action or proceeding in which it is entered."

We cannot agree with the trial court that the Tennessee court order of July 1988 destroys the existence of the prior support order within the contemplation of the statute. The order clearly states that respondent "*temporarily *** will pay no support for his child.*" (Emphasis added.) A temporary suspension of an existing support order does not affect the nature of the underlying order as a "support order" within the definition which, by its language, encompasses temporary judgments of support. Under the terms of the order, payment of support can recommence upon a demonstration by petitioner that "reasonable visitation" will take place. Although respondent may be currently under no duty to make child-support payments, an order of support, albeit one as to which execution is temporarily suspended, exists in favor of petitioner. Accordingly, the third assignment of error is well-taken.

By her fourth assignment of error, petitioner contends that the trial court erred in finding that the court has no authority to modify a Foreign order of support that has been properly registered in Ohio in a URESA action. Petitioner's motion, filed on December 27, 1988, asked the trial court both to register the Tennessee order of support and to set or modify child support according to Ohio law. The trial court in adopting the referee's report, held that, pursuant to *San Diego v. Elavsky* (1979), 58 Ohio St. 2d 81, it was legally unable to increase or modify the Tennessee support order.

Although *San Diego v. Elavsky* does not expressly so hold, we note that the only issue in this matter which has been the subject of a court

hearing or briefing by the parties is the issue of the court's jurisdiction over respondent. Petitioner's motion requesting modification was not accompanied by supporting memoranda or affidavits setting forth the reasons for the requested modification. Further, the hearing held on April 6, 1989, concerned only the issue of respondent's residence. Therefore, there has been no opportunity for the parties to litigate fully the issue of whether grounds exist for the court to either grant or deny the requested modification, the issue of the court's power to do so notwithstanding. Accordingly, any error by the trial court regarding whether it has the authority to modify the Tennessee order with both parties participating resulted in no present prejudice to the petitioner. The fourth assignment of error is not well-taken.

By her fifth assignment of error, petitioner alleges error in the trial court's holding that this matter could not be certified under the Uniform Child Custody Jurisdiction Act (UCCJA), as codified at R.C. 3109.21 through 3109.37. Petitioner cites to the definition of "custody determination" found in R.C. 3109.21(B), which defines such as "a court decision and court orders and instructions providing for the custody of a child, including visitation rights." It is petitioner's argument that, because the Tennessee order included language affecting respondent's visitation rights, the order falls within the purview of R.C. 3109.21(B) and is this certifiable in Ohio under the UCCJA.

The Ohio Supreme court in *In re Wonderly* (1981), 67 Ohio St. 2d 178, at 180, stated that the express purposes of the UCCJA are "to avoid jurisdictional competition and conflict with the courts of other states and assure that the state with the optimum access to the relevant facts makes the *custody determination* *** " (emphasis added.) The court held further, at 183, that a "custody determination" requires application of the UCCJA when the custody of a minor child is the primary issue or one of several issues in the case.

Despite petitioner's argument that the issue of visitation brings into play the provisions of the UCCJA in this case, given the language of *In re Wonderly* and by the very nature of the act, custody of the child must be a disputed issue before the UCCJA applies. Here, there is absolutely no indication that the issue of custody is disputed. Petitioner was awarded custody of the parties' child by the Tennessee order, and nothing in the record demonstrates a desire by either party to alter that decree. Nor is any motion for modification of visitation presented even assuming that the UCCJA would apply. Therefore, the UCCJA is inapplicable to this action. The fifth assignment of error is not well-taken.

Finally, by her first assignment of error, petitioner contends that the trial court erred in granting respondent's motion to strike from the file petitioner's filed objections to the referee's report. The trial court held that the objections were neither specific not properly before the court, despite petitioner's timely request for additional time to file specific objections because of delay by the court reporter in furnishing the transcript of the referee hearing.

We note, however, that, although the trial court did refuse to consider petitioner's objections, the court stated in its judgment entry that it had, nevertheless, reviewed the report of the referee and, upon finding no error, had adopted it. Moreover, the same issues raised by petitioner's objections were also raised in her brief on appeal, providing this court the opportunity to review the trial court's decision in light of petitioner's stated objections. Therefore, petitioner suffered no prejudice by the trial court's striking her objections, and the error in doing so must be deemed harmless. The first assignment of error is not well-taken.

Accordingly, petitioner's first, fourth, and fifth assignments of error are overruled; the second and third assignments of error are sustained; the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is reversed; and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed and cause remanded.*

REILLY, P.J., and MARTIN, J., concur.

MARTIN, J., of the Fairfield County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.