OPINION
{¶ 1} Appellant Jorge Ortiz appeals the final decree of divorce granted by the Jefferson County Court of Common Pleas. Although Appellant has initiated this appeal, he is also challenging whether the divorce decree is a final appealable order. Appellant contends that the trial court failed to value and divide marital assets held in a storage locker in Florida. The divorce decree distributes the contents of that locker so that each party may take their personal items. The record contains no valuations for those items except by referring to it collectively as "junk." The divorce decree specifically retains jurisdiction over the actual process of physically removing and handing over the contents of the locker. We conclude that the trial court has simply retained the jurisdiction to enforce its order that is inherent in every court order, but does not prevent the decree from being final and appealable. Appellant also argues that Appellee Gwendolyn Ortiz did not satisfy the six-month residency requirement for filing for divorce, but the record clearly shows that it was satisfied. Appellant's other arguments deal with the exercise of the court's discretion in failing to grant a continuance and an alleged error in the equitable division of the marital property. Based on the record, there was no abuse of discretion in these matters, and the divorce decree is affirmed.
 FACTS AND PROCEDURAL HISTORY {¶ 2} The parties were married on December 1, 1977, in Florida. Appellee wife moved from Florida to Jefferson County, Ohio, in December 2003. On August 10, 2004, Appellee filed a complaint for divorce in the Jefferson County Court of Common Pleas. Final hearing was set for November 1, 2004. Appellant was not represented by counsel at the time, and he did not personally appear at the hearing. Appellee's counsel notified the court at the hearing that Appellant had pleaded guilty to a criminal charge related to a stalking protection order, and that he could not be located after he failed to report to his probation officer. (11/1/04 Tr., p. 4.) On November 5, 2004, the court issued a final decree of divorce. Appellant filed an appeal of the divorce decree.
 {¶ 3} On November 29, 2004, Appellant, who had by this time obtained counsel, filed a motion to set aside the divorce on the grounds that he had not been notified of the final divorce hearing. The court vacated the divorce decree on December 7, 2004.
 {¶ 4} On December 9, 2004, Appellant filed a notice to dismiss the appeal. It was dismissed on December 27, 2004.
 {¶ 5} On December 9, 2004, Appellant also filed a motion to dismiss the divorce complaint for lack of jurisdiction, arguing that Appellee had not met the residency requirement for filing for divorce in Ohio pursuant to R.C. § 3105.03. A hearing was held on the motion on December 13, 2004. During the hearing, Appellee repeatedly stated that she moved to Ohio in December of 2003, that she intended to reside in Ohio, and that she had no intention of returning to Florida. (12/13/04 Tr., pp. 6, 14-15, 17-18, 20.) The court subsequently overruled the motion to dismiss.
 {¶ 6} On January 3, 2005, the court permitted Appellant's counsel to withdraw from the case. A final divorce hearing was scheduled for January 19, 2005. Appellant had not secured new counsel by the time of the hearing, and showed up late for the hearing. After interrupting the hearing, Appellant asked for a continuance so that he could obtain counsel. The trial judge reminded Appellant that he had fired his prior counsel. The trial judge also noted that Appellant had previously been told that the final hearing had been delayed too long already and that no further extensions would be granted. (1/19/05 Tr., pp. 16-17.) Appellant acknowledged that he had been informed that no further delays would be tolerated. (1/19/05 Tr., p. 17.)
 {¶ 7} Appellant then acted as his own attorney and immediately began badgering Appellee during cross-examination. (1/19/05 Tr., pp. 17ff.) When the matter of Appellant's stalking conviction arose, he denied that it ever occurred. The trial judge stated: "I did the order. I remember the hearing and the order very clearly." (1/19/05 Tr., p. 19.) Appellant denied he was at the hearing, and the trial judge again reminded him that, "[y]ou were here, you testified, I remember your testimony very clearly." (1/19/05 Tr., p. 19.)
 {¶ 8} There was considerable discussion about numerous personal items that were stored in two storage units in Florida. Apparently, many personal items belonging to both parties had been stored in the first unit. Pursuant to the prior divorce decree of November 5, 2004, Appellee was awarded the right to enter the storage unit and retrieve all items of her personal property. Appellee removed most of the items from the first storage unit and placed them in another storage unit in Florida. (1/19/05 Tr., p. 11.) The parties were vague as to the contents of the storage unit, and the contents were described several times as junk or valueless personal property. (1/19/05 Tr., pp. 11, 25, 45, 46, 49). Appellee testified that, "everything that's in that storage room is basically stuff that's been given to me by my family down through the years." (1/19/05 Tr., p. 49.) Appellant briefly mentioned that there might be some electronic equipment and two china sets. (1/19/05 Tr., p. 102.) There were somewhat vague references made to old coins, a sword, and Appellant's family jewelry. (1/19/05 Tr., p. 68.) Despite repeated prodding by the court, the parties could not establish values for any specific item in the storage locker. There was testimony that at the time of the hearing the only property the parties owned were two automobiles and the contents of the storage lockers. (1/19/05 Tr., p. 45.) Appellee believed that Appellant had, at one time, a hidden bank account with $6000 in it, but this was apparently spent by the time of the hearing. (1/19/05 Tr., p. 39.)
 {¶ 9} Appellant agreed that Appellee could keep any of her personal items, such as clothing, jewelry, or watches. (1/19/05 Tr., p. 102.) Appellee also agreed that Appellant could have his personal items from the storage locker. (1/19/05 Tr., p. 56.)
 {¶ 10} There was some testimony about marital debt. Appellee believed that Appellant had accumulated considerable credit card debt, but those cards were not in her name and she did not have access to them. (1/19/05 Tr., pp. 12, 21, 22.) Appellant later stated that there might be up to $53,000 in credit card debt. (1/19/05 Tr., p. 83.) Appellant believed he had seven or eight credit cards in his name, but did not know any details about them. (1/19/05 Tr., p. 84.) He thought that Appellee's name was on one of them. (1/19/05 Tr., p. 87.) Appellant also described a number of undocumented loans he had received from friends, in amounts of $2000, $10,000, $4,000, $900, and $700. Some of these loans had been repaid, but Appellant was vague about the amounts. (1/19/05 Tr., pp. 88-91.) There was no indication that Appellee had anything to do with these loans or that she knew about them.
 {¶ 11} The trial court issued a new divorce decree on January 28, 2005. The court found that Appellant had resided in Ohio for more than six months prior to filing for divorce. The court took judicial notice of the three-year anti-stalking order issued against Appellant. The court granted the divorce on grounds of extreme cruelty, incompatibility, and on the grounds that the parties had lived apart for more than one year. The court made Appellant responsible for all marital debt. Each party was awarded one vehicle. The court also formulated a procedure for the parties to retrieve, "various items of personal property," that were in a storage locker in Florida. The exchange was to take place with local law enforcement officers present, and the anti-stalking order was to remain in effect except to the extent needed to carry out the exchange.
 {¶ 12} The divorce decree also stated:
 {¶ 13} "If the parties have a dispute over any items in the storage locker, the item is to remain [in] the storage locker and the parties are to file a motion in this Court to resolve the issue of the division of personal property. This Court shall retain jurisdiction of the items of personalty to the extent there is a dispute. If the parties agree as to the division, then the matter will be resolved in full satisfaction of both parties. If there is a dispute, either party may file a motion with this Court for final resolution of the division of the personalty."
 {¶ 14} On February 24, 2005, Appellant filed this timely appeal.
 {¶ 15} Appellant has raised two jurisdictional issues, as well as two additional assignments of error. Both parties are represented by counsel in this appeal.
 ASSIGNMENT OF ERROR NO. 1 {¶ 16} "THE FINAL DECREE OF DIVORCE ENTERED BY THE TRIAL COURT ON JANUARY 28, 2005 IS NOT A FINAL APPEALABLE ORDER"
 {¶ 17} Appellant argues that the judgment being appealed is not a final appealable order. Uniquely, Appellant, who filed the appeal, is making this argument. It is unclear why Appellant is raising this argument, since he filed the appeal and can always dismiss his own appeal if he chooses not to have the matter decided. Be that as it may, Appellant argues that the trial court has failed to dispose of all issues by failing to determine exactly what was in the storage locker in Florida, in failing to place a value on the items in the storage locker, and by failing to specifically allocate that property between the parties.
 {¶ 18} Appellant is correct that this Court only has jurisdiction to review final appealable orders. "Courts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district * * *." Section 3(B)(2), Article IV of the Ohio Constitution. This Court is permitted to review a judgment only when it is presented with an order that is both final and appealable as defined by R.C. § 2505.02, or designated as such by a specific statute or procedural provision. Chef Italiano Corp.v. Kent State Univ. (1989), 44 Ohio St.3d 86, 541 N.E.2d 64, syllabus. The Ohio Supreme Court has said: "A final order * * * is one disposing of the whole case or some separate and distinct branch thereof." Noble v. Colwell (1989), 44 Ohio St.3d 92, 94,540 N.E.2d 1381.
 {¶ 19} Appellant contends that the failure to resolve the division of marital assets prevents the divorce decree from being a final appealable order, citing Linn v. Linn, 4th Dist. No. 02CA2835, 2002-Ohio-5365, and Muhlfelder v. Muhlfelder, 11th Dist. Nos. 2000-L-183, 2000-L-184, 2002-Ohio-1166. In Linn, the trial court failed to value a pension that was marital property, and in Muhlfelder, the trial court primarily failed to determine whether Mrs. Muhlfelder's new home was marital property. In the instant case, though, the trial court left the parties to divide amongst themselves the contents of a storage locker full of items described as "junk" and "broken," (1/19/05 Tr., pp. 11, 27) or that were described as Appellant's separate property that he had inherited from his father (1/19/05 Tr., p. 25). While Appellant made an attempt to discuss a few specific items he believed might be in the locker and in broad, vague terms attempted to place a value on the contents as a whole, there was no real evidence aside from their vague recollections. Of course, the trial court was always free to believe, or disbelieve, any party's testimony. Thus, the record reflects that the trial court was left to divide and distribute marital property with little or no value, as well as the parties' personal effects and items of separate property. This is quite different than the type of property at issue in Muhlfelder andLinn.
 {¶ 20} In a divorce case, the trial court has jurisdiction over all marital and separate property of the parties, as stated in R.C. § 3105.171(B): "In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. * * * upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property in which one or both spouses have an interest."
 {¶ 21} Marital property is property acquired during the marriage, whereas separate property is property that is brought into the marriage or is otherwise obtained outside the context of the marriage. R.C. § 3105.171(A).
 {¶ 22} The court must divide the marital property equitably, and normally would distribute the separate property to the corresponding party that acquired it. R.C. § 3105.171(B), (C).
 {¶ 23} The trial court has no authority to change the division of property once it becomes final, as stated in R.C. §3105.171(I): "A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court."
 {¶ 24} At first blush, it may appear to Appellant that the trial court's order is not final because he appears to retain jurisdiction over the distribution of personal property in the storage locker in Florida. In the context of this case, though, it is clear that the trial court is merely retaining jurisdiction to enforce its order allowing Appellant to retrieve his personal property from the storage locker. A court always retains jurisdiction to enforce its orders. Collins v. Collins (2000),139 Ohio App.3d 900, 906, 746 N.E.2d 201. As Appellee points out, this is normally done through the filing of a contempt of court motion. The divorce decree is not interlocutory or nonappealable simply because the court "reserved" jurisdiction to enforce the order, since the authority to enforce this order is inherent in the order itself.
 {¶ 25} The court's entry concerning the distribution of the contents of the storage locker appears to have more to do with Appellant's anti-stalking protection order, and with the fact that Appellant was acting pro se, than with the actual contents of the locker. During trial, the parties agreed that the locker contained only personal items, and that they could each have their own personal items. In a more typical case, the divorce decree might simply have given Appellant permission to go to the storage locker and take his personal items, and that would have been the end of the matter. The court would not need to order law enforcement officers to assist with the exchange. The court also would not need to explain that the parties should cooperate in this exchange, or that the court has the authority to resolve the details of implementing the order. Any attorney would understand that the court inherently has the right to enforce its orders, and that the court could order relief from judgment if something very unusual occurred during the distribution of what was presumed to be personal effects of little monetary value. In this case, Appellant was not represented by counsel, and the court may have spelled out some of these rights in the divorce decree to make the procedure completely clear to Appellant, particularly in light of the protection order. Once again, the divorce decree should not be treated as interlocutory or nonappealable simply because the trial court correctly informed the parties that they could, if necessary, file a motion with the trial court regarding the method of distributing Appellant's personal items.
 {¶ 26} It is also clear that, throughout the course of the divorce trial, the parties and the trial court treated the contents of the storage locker primarily as separate property rather than marital property. Appellant does not point to any statue or caselaw that would have required the trial judge to put specific values on all separate property, or that would prevent a divorce decree from being a final appealable order because the trial court merely distributed personal effects of apparently little monetary value that were primarily separate property.
 {¶ 27} This Court recently affirmed a divorce decree in which one of the issues on appeal was the trial court's method of disposing of scaffolding that one party referred to as scrap, while the other claimed it was worth $35,000. Knox v. Knox, 7th Dist. No. 04 JE 24, 2006-Ohio-1154. The trial court ordered the husband to sell the scaffolding at auction and equally divide the proceeds. There was no issue in that case that the divorce decree might not be final and appealable simply because an asset could not be accurately valued, or because some of the details of the sale and distribution of the proceeds were yet to be resolved at the time the decree was issued.
 {¶ 28} In the instant case, the trial court allowed each party to take their own personal items. Most of these items were of little value, and there was no inventory of the items. A provision allowing the parties to take or keep their personal effects appears in many divorce decrees, and it does not prevent such divorce decrees from being recognized as final appealable orders. For example, in Okos v. Okos (2000),137 Ohio App.3d 563, 739 N.E.2d 368, the trial court included the following provision in the divorce decree: "The court further finds that each party shall be entitled to their own clothing, jewelry, and personal effects free and clear of any claim of the other." Id. at 589. There was no issue in Okos that this general provision rendered the divorce decree interlocutory or nonappealable. Similar provisions are found in many other cases, including cases from this Court. See, e.g., Quigley v. Quigley, 6th Dist. No. L-03-1115, 2004-Ohio-2464; Motycka v. Motycka (June 19, 2001), 3rd Dist. No. 15-01-02; Rudloff v. Rudloff (Aug. 26, 1999), 7th Dist. No. 96 CA 60.
 {¶ 29} Based on all these considerations, Appellant's first assignment of error is overruled, and the divorce decree is determined to be a final appealable order.
 ASSIGNMENT OF ERROR NO. 2 {¶ 30} "THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THE PLAINTIFF HAD MET THE RESIDENCY REQUIREMENTS OF OHIO REVISED CODE SECTION 3105.03"
 {¶ 31} R.C. § 3105.03 states:
 {¶ 32} "The plaintiff in actions for divorce and annulment shall have been a resident of the state at least six months immediately before filing the complaint. Actions for divorce and annulment shall be brought in the proper county for commencement of action pursuant to the Rules of Civil Procedure. The court of common pleas shall hear and determine the case, whether the marriage took place, or the cause of divorce or annulment occurred, within or without the state."
 {¶ 33} The residency requirement of R.C. § 3105.03 is jurisdictional. McMaken v. McMaken (1994), 96 Ohio App.3d 402,405, 645 N.E.2d 113; Coleman v. Coleman (1972),32 Ohio St.2d 155, 162, 61 O.O.2d 406, 291 N.E.2d 530.
 {¶ 34} "The word `residence' in R.C. 3105.03 means `domiciliary residence,' a concept which has two components: (1) an actual residence in the jurisdiction, and (2) an intention to make the state of jurisdiction a permanent home." Hager v.Hager (1992), 79 Ohio App.3d 239, 244, 607 N.E.2d 63.
 {¶ 35} Appellant argues that Appellee fled to Ohio in 2003, but that she did not intend to live here, and thus, did not meet the residency requirement to file for divorce in Ohio.
 {¶ 36} Appellant's argument is not supported by the record, which is replete with details about Appellee's intention to stay in Ohio after December of 2003. A hearing was held on this issue on December 13, 2004. At the hearing, Appellee testified that she had lived in Mt. Pleasant in Jefferson County from the time she arrived in Ohio in 2003. (12/13/04 Tr., p. 17.) She stated that she came to Ohio with the intention of living in Ohio. (12/13/04 Tr., p. 17.) She stated that she had no intention to return to Florida after she came to Ohio. (12/13/04 Tr., p. 15.) She had no plans on reuniting with Appellant in Florida at any time after she left in 2003. (12/13/04 Tr., p. 15.) Although there are certain facts that could indicate that she had not completely broken her ties with Florida, the trial court decided to believe Appellee's unequivocal declarations that she moved to Ohio in December of 2003 and intended to make Ohio her home at that time. Again, the trier of fact is free to believe or disbelieve any testimony that is presented by the parties. City of Cleveland v.Cleveland Elec. Illuminating Co. (1983), 4 Ohio St.3d 184, 188,448 N.E.2d 130.
 {¶ 37} The divorce complaint was filed in August 2004, more than six months after Appellee became a resident of Ohio. Therefore, Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 3 {¶ 38} "THE TRIAL COURT ERRED IN FAILING TO VALUE THE PERSONAL PROPERTY OF THE PARTIES AND IN FAILING TO MAKE AN EQUITABLE DIVISION OF THE MARITAL PROPERTY AND DEBT"
 {¶ 39} Appellant acknowledges that a trial court's division of marital property is reviewed for abuse of discretion. Cherryv. Cherry (1981), 66 Ohio St.2d 348, 355, 20 O.O.3d 318,421 N.E.2d 1293. An abuse of discretion implies a decision that is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481,450 N.E.2d 1140.
 {¶ 40} Marital property in a divorce case should be divided equally, unless the trial court determines that an equal division would be inequitable. See R.C. § 3105.171(C)(1). If the division of marital assets is not equal, the trial court should explain in sufficient detail why an unequal division is equitable. Kaechelev. Kaechele (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197, paragraph two of the syllabus.
 {¶ 41} Although the trial court did not give many details about why Appellant was held responsible for the marital debt, the record is clear that the debts discussed at trial were incurred solely by Appellant. Regarding the credit card debt, Appellee testified that she never had access to the credit cards and that her name was not on them. (1/19/05 Tr., p. 12.) Appellant testified that he thought he had eight credit cards, and that seven were in his name only. (1/19/05 Tr., pp. 85, 87). Appellant did not know what he had done with the credit cards, knew nothing about the bills, about collection attempts on the debt, or anything else about the debt other than his speculative estimate that the debt was $52,000-$53,000. There were no records produced of any specific credit card debt, and thus, the trial court was left with very few facts with which to formulate a judgment concerning the credit card debt. Based on the very vague evidence presented at trial, the trial court did not abuse its discretion in attributing the credit card debt to Appellant. The trial court was free to believe the testimony of both parties that the credit cards were in Appellant's name and that Appellee had nothing to do with them.
 {¶ 42} The only other debts discussed were personal loans taken out by Appellant. He testified that he borrowed $2000 from a friend named Joe Minor, $10,000 from Mildred Hoye, $4900 from Wayne Arie, $700 from his brother Tony, and possibly some from his sisters. (1/19/05 Tr., pp. 88-91.) Appellant could not produce any records of these loans, even though he thought that a promissory note had been executed for one of the loans. Appellant was very vague as to any repayments made on any of these loans. The trial court apparently believed that at least some of these loans existed, but that they were personal to Appellant. Based on the very sketchy testimony on this subject, it is quite clear why the trial court attributed these debts to Appellant.
 {¶ 43} There were two working vehicles as part of the marital assets, and the court awarded one to each party. Once again, no clear valuation of these vehicles was given by either party.
 {¶ 44} Appellant seems to be arguing that the trial court must put some type of monetary value on the assets of the parties, regardless of the evidence actually presented at trial. This is a misstatement of the law in this area. Appellant citesWillis v. Willis (1984), 19 Ohio App.3d 45, 482 N.E.2d 1274, in support of his theory that the trial court is not permitted to omit the valuation of any marital asset. The following section ofWillis is sometimes cited for this rather sweeping principle:
 {¶ 45} "A flat rule to determine value cannot be established as equity depends on the totality of the circumstances. However, the court does have broad discretion to develop some measure of value. The trial court is not privileged to omit valuation altogether. A party's failure to put on any evidence does not permit assigning an unknown as value. The court itself should instruct the parties to submit evidence on the matter." (Citations omitted.) Id. at 48.
 {¶ 46} What is nearly always left out of these general observations from the Willis case is the fact that Willis is referring specifically to the valuation of a pension fund, and not necessarily to the valuation of every last individual item of marital property, whether it be a family photo, a broken toy, a pile of old magazines, or any of thousands of similar items. The Ohio Supreme Court adopted the analysis and holding of Willis,
but only in the context of pension and retirement funds. Hoyt v.Hoyt (1990), 53 Ohio St.3d 177, 180, 559 N.E.2d 1292. Few marital assets present the range and intricacy of problems associated with pension and retirement funds. Id. There has never been any general rule that the trial court must put a monetary value on every conceivable marital asset before a final and appealable divorce decree can be granted, particularly if the parties refuse to provide or are completely unable to provide any factual basis to value their personal effects. As stated earlier, trial courts normally deal with personal effects and sentimental items in a divorce by simply allowing the parties to divide the items amongst themselves, and the trial court's order in this case seems to be a more elaborate version of the usual provision.
 {¶ 47} In the instant case, Appellant apparently controlled the finances of the family, but had no documented evidence concerning any financial matters relating to this divorce. Appellee was also unable to provide much cogent testimony regarding finances and valuations. With respect to the property that most concerns Appellant — the contents of the storage locker in Florida — Appellee testified that the locker contained "junk." (1/19/05 Tr., pp. 11, 27.) That was about as specific a valuation as Appellee could produce at trial. Appellant twice asked Appellee if the contents of the locker were worth $35,000-$40,000, but she denied this each time. (1/19/05 Tr., pp. 25, 27.) The contents of the locker were intermittently discussed at trial, but the parties provided very few details about those contents. Appellant suggested a few times that he had a list of the contents, but no list was entered into evidence. In the midst of his rambling testimony, consisting mostly of insults directed at Appellee, he did not attempt to catalog or give a specific value to any item that was allegedly in the storage locker. Appellant once stated that Appellee had sold, "35, 40 thousand dollars just in personal items alone," but he did not testify that this was the value of the contents of the storage locker. (1/19/05 Tr., p. 101.) Although Appellant now asserts that the contents may be worth up to $60,000, there is nothing in the record that reflects such a valuation. The parties simply did not have any more information to share at trial concerning the contents and value of the items in the storage locker, despite repeated questioning by the trial judge.
 {¶ 48} A general rule that applies to every review of the division of marital assets is this: "In allocating property between the parties to a divorce * * * the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." Kaechele, supra,35 Ohio St.3d 93, 518 N.E.2d 1197, paragraph two of the syllabus. Whether or not there is "sufficient detail" depends on the facts of the case. In the instant case, the parties did not give the trial court any means to create an equal division of marital property, at least in terms of monetary value, because they themselves did not know the details of their assets and their debt. The trial court was left to frame an equitable solution. The trial court considered that there were two working vehicles, of unknown value, and awarded one to each party. The court considered that there were debts stemming from credit cards and personal loans, but that Appellant was clearly responsible for creating those debts. The court also had to deal with the problem of a storage locker full of unknown items of unknown value. Apparently, the only credible valuation put on those items was that they were "junk." Nevertheless, the trial court was still left with the responsibility of dividing up that "junk," and he devised an equitable plan that took into account the wishes of both parties concerning the property, as well as dealing with Appellant's anti-stalking protection order. The divorce decree is consistent with the facts revealed at trial, and does not appear to be unfair or inequitable to either party. The divorce decree has few details about the property because the divorce hearing provided few credible details to rely upon. The lack of specific monetary valuations is consistent with the evidence at trial, and does not prevent this Court from reviewing the fairness of the judgment. Therefore, Appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 4 {¶ 49} "THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO GRANT THE DEFENDANT-APPELLANT'S REQUEST FOR A CONTINUANCE TO OBTAIN NEW COUNSEL AFTER THEN COUNSEL WAS PERMITTED TO WITHDRAW"
 {¶ 50} Appellant contends that it was reversible error for the trial court to continue with the final divorce hearing without allowing him more time to find an attorney. A trial court's decision on whether or not to grant a continuance is reviewed for abuse of discretion. Sayre v. Hoelzle-Sayre
(1994), 100 Ohio App.3d 203, 208, 653 N.E.2d 712. Appellee filed her divorce complaint on August 10, 2004. A final hearing was held on November 1, 2004. At that hearing it was noted that Appellant had been in the Jefferson County Jail on a stalking charge, had pleaded guilty, and was required to report to a probation officer but could not be found. (11/1/04 Tr., p. 4.) The hearing proceeded without Appellant. A final divorce decree was issued on November 5, 2004. Appellant filed an appeal of the divorce decree, and asked the trial court to vacate the decree because he was not present at the hearing. After a hearing on December 4, 2004, in which Appellant was present and was represented by counsel, the court vacated the divorce decree and reset the final hearing for December 20, 2004.
 {¶ 51} On December 9, 2004, Appellant filed a motion to dismiss the divorce complaint, and he requested an order that the parties should attend marriage counseling. A hearing on this motion took place on December 13, 2004, and it was overruled. On January 3, 2005, Appellant's counsel withdrew from the case.
 {¶ 52} Final hearing took place on January 19, 2005. Appellant was not present at the start of the hearing. After Appellee completed direct examination by her attorney, Appellant arrived without counsel. (1/19/05 Tr., p. 16.) Appellant informed the court that he did not have time to secure new counsel. The trial judge stated that Appellant had fired his prior counsel and that Appellant was previously informed that no further delays would be tolerated. (1/19/05 Tr., p. 17.) The hearing continued with Appellant acting pro se.
 {¶ 53} The record reflects that Appellant was at least partially responsible for not appearing at the November 1, 2004, hearing, and that he caused further delays by filing motions to have the original decree vacated, to dismiss the divorce complaint, and to delay the proceedings to find new counsel. Appellant gave no explanation why he dismissed his original counsel. Appellant was also convicted of stalking Appellee and was subject to an anti-stalking protection order, which contributed to the need to have a speedy resolution of this case. Furthermore, Appellant did not file a written motion for continuance. Instead, he appeared late at the final hearing and interrupted the proceedings by asking for more time to find counsel. Based on these facts, it does not appear that the trial judge abused his discretion in denying Appellant a further continuance to find counsel, particularly since the request was untimely made after the divorce hearing had started and after Appellee had already testified. Appellant's fourth assignment of error is hereby overruled.
 CONCLUSION {¶ 54} Appellant has not demonstrated that there is anything unresolved in the final divorce decree except for the physical act of dividing up the contents of a storage locker in Florida. The decree has considered and provided for this act. Therefore, Appellant's assertion that the divorce decree is not a final appealable order is overruled. The record also reflects that Appellee was a resident of Ohio for more than six months before filing for divorce, and thus, Appellant's second assignment of error is overruled. The overall record and the divorce decree itself contain sufficient details for this Court to determine that the decree was just and fair. The lack of details in the divorce decree concerning specific valuations for marital and separate property is due to the failure of the parties to present evidence on these matters rather than any error by the trial court. There was no abuse of discretion in how the trial court divided the marital assets and debts, and therefore, Appellant's third assignment of error is overruled. Finally, the record shows that Appellant contributed to delaying the final divorce hearing and did not explain why he fired his counsel prior to the final hearing. The trial court did not abuse his discretion in overruling Appellant's untimely motion for a continuance, and Appellant's fourth assignment of error is overruled. Since we are not persuaded by any of Appellant's arguments, the judgment of the Jefferson County Court of Common Pleas is affirmed in full.
Donofrio, P.J., concurs.
Vukovich, J., concurs.