OPINION
{¶ 1} Plaintiff-appellant, Kelly J. Swearingen, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting the motion of defendant-appellee, John D. Swearingen, Jr., for a change of venue and transferring this matter to Henry County. For the following reasons, we affirm.
 {¶ 2} In April 2003, Kelly filed a complaint for divorce against her husband, John, in Henry County, Ohio. Prior to filing for divorce, Kelly resided with John and their two daughters in Napoleon, which is located in Henry County. *Page 2 
 {¶ 3} In December 2003, Kelly decided to move to Columbus, which is located in Franklin County. She spoke with her friend, Tina Seamon, who informed her of a job opening at Choice Pharmacy Services ("Choice") in Grandview, Ohio. Kelly applied for a pharmacist position at Choice and was hired. On February 2, 2004, Kelly began working 45 hours every other week at Choice.
 {¶ 4} At first, Kelly lived with Seamon and her husband at their Columbus home during the weeks she worked at Choice. In April 2004, Kelly started looking for her own Columbus residence. On May 10, 2004, Kelly entered into a year-long lease for the house next to the Seamons' house. She purchased furniture for the house, including a bedroom suite and a kitchen table. Then, on June 1, 2004, Kelly moved into the house.
 {¶ 5} Through the majority of the spring and summer of 2004, Kelly lived in both Columbus and Napoleon. She and John had agreed to a custody sharing arrangement whereby the children lived with Kelly one week and with John the next. When Kelly had custody of the children, she lived with them at the marital residence in Napoleon. When John had custody of the children, Kelly lived and worked in Columbus.
 {¶ 6} Kelly, however, did not tell John about her new house and job in Columbus. Rather, according to John, Kelly said that she planned to live in the marital residence, and she asked him to release his dower rights so that she could refinance their house and purchase John's half with the proceeds from the refinancing. John agreed, and Kelly closed on the refinancing on August 11, 2004.
 {¶ 7} On August 13 and 15, 2004, Kelly and John emailed about child care and transportation arrangements for the upcoming school year. Underlying these emails is *Page 3 
the shared assumption that the children would continue to attend their school in Napoleon during the 2004-2005 school year.
 {¶ 8} On August 16, 2004, Kelly, John, their attorneys, and their children's guardian ad litem attended a mediation to negotiate issues related to the divorce. During the mediation, Kelly and John reached an apparent resolution of a number of custody and financial issues. Despite their progress in mediation, Kelly dismissed her complaint for divorce in Henry County and, on August 24, 2004, filed for divorce in Franklin County. At the same time, Kelly took her daughters to Columbus without telling John. Kelly also withdrew the children from their school in Napoleon and registered them for school in Columbus.
 {¶ 9} In response, John filed a motion for dismissal or, in the alternative, for transfer of venue. The trial court granted John's motion to dismiss on the grounds that it lacked jurisdiction over Kelly's complaint, but that judgment was reversed on appeal.Swearingen v. Swearingen, Franklin App. No. 05AP-657, 2005-Ohio-6809.
 {¶ 10} Upon remand to the trial court, John re-filed his motion to transfer venue. John attached to his motion the proposed agreement the parties had negotiated in the Henry County mediation. On April 10 and 13, 2006, the trial court held an evidentiary hearing on John's motion. Prior to the hearing, Kelly's attorney made an oral motion to strike the proposed agreement from the record and to prohibit any testimony as to that agreement. Kelly's attorney based his motion upon Evid.R. 408, which prohibits parties from introducing into evidence offers to compromise, as well as conduct or statements made in compromise negotiations. The trial court overruled the motion. While cross-examining Kelly, John's attorney asked her about statements she and others had made *Page 4 
during the mediation. Although Kelly's attorney again objected on Evid.R. 408 grounds, the trial court overruled the objection.
 {¶ 11} On June 5, 2006, the trial court issued a decision and entry granting John's motion and ordering the transfer of the case to Henry County. Kelly now appeals from that judgment and assigns the following errors:
 [1] WHETHER THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY ADMITTING EVIDENCE OF A PRIOR MEDIATION AT THE HEARING ON APPELLE'S MOTION FOR CHANGE OF VENUE?
 [2] WHETHER THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT FOUND THAT SHE DID NOT MEET THE VENUE REQUIREMENTS WHEN SHE FILED HER COMPLAINT FOR DIVORCE IN FRANKLIN COUNTY, OHIO?
 {¶ 12} By Kelly's first assignment of error, she argues that the trial court erred in admitting into evidence the proposed agreement and in allowing John's attorney to question her about statements made during the mediation. We disagree.
 {¶ 13} Generally, the admission or exclusion of evidence is within the discretion of the trial court, so long as that discretion is exercised in line with the rules of procedure and evidence. Rigby v. LakeCty. (1991), 58 Ohio St.3d 269, 271. An appellate court will not reverse a trial court's decision to admit or exclude evidence absent an abuse of discretion. State ex rel. Sartini v. Yost, 96 Ohio St.3d 37,2002-Ohio-3317, ¶ 21.
 {¶ 14} Pursuant to Evid.R. 408:
 Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule *Page 5 
does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.
Thus, Evid.R. 408 only excludes evidence of compromises and conduct or statements made in compromise negotiations when a party offers that evidence to prove or disprove liability or the amount of damages.USCA/USA, Inc. v. High Tech Packaging, Inc., Wood App. No. WD-05-088,2006-Ohio-6195, at ¶ 34 ("Evid.R. 408 is applicable only to bar the admission of evidence which is offered to show `that because a settlement offer was made, the offeror must be liable, because people don't offer to pay for things for which they are not liable.'"). If a party offers such evidence for any other purpose, Evid.R. 408 does not prohibit the introduction of that evidence. First Bank of Marietta v.L.C. Ltd. (Dec. 28, 1999), Franklin App. No. 99AP-304, citing Shimola v.Cleveland (1992), 89 Ohio App.3d 505, 511. Although Evid.R. 408 includes an enumerated list of instances in which compromise evidence is admissible, that list is not exhaustive. Evid.R. 408 staff notes (1980).
 {¶ 15} Here, John's attorney introduced the proposed agreement and questioned Kelly regarding statements made in the mediation so that he could prove the appropriate venue for this case. Thus, John's attorney did not offer, and the trial court did not consider, the disputed evidence as proof of the validity or invalidity of Kelly's claim. In other words, the admission of the evidence did not impact the resolution of the operative issues surrounding the divorce, including the division of marital assets, custody, or child and/or spousal support. As a result, we conclude that the trial court did not violate *Page 6 
Evid.R. 408 in admitting evidence related to the mediation,[1] and we therefore overrule Kelly's first assignment of error.
 {¶ 16} By Kelly's second assignment of error, she argues that the trial court erred in designating Henry County the proper venue for this case. We disagree.
 {¶ 17} In actions for divorce, the proper venue generally lies "in the county in which the plaintiff is and has been a resident for at least ninety days immediately preceding the filing of the complaint." Civ.R. 3(B)(9). In order to define "resident," Ohio courts rely upon case law interpreting R.C. 3105.03, which requires a plaintiff to be a "resident" of Ohio for six months before seeking a divorce in any Ohio court.State ex rel. Saunders v. Court of Common Pleas of Allen Cty. (1987),34 Ohio St.3d 15, 16. As used in R.C. 3105.03, "resident" means "one who possesses a domiciliary residence, a residence accompanied by an intention to make the state of Ohio a permanent home." Coleman v.Coleman (1972), 32 Ohio St.2d 155, 162. This definition devolves into two components: (1) an actual residence, i.e., abode or place of dwelling, in the state or, in this case, county, and (2) an intention to make that residence a permanent home. Ortiz v. Ortiz, Jefferson App. No. 05 JE 6, 2006-Ohio-3488, at ¶ 34; Heath v. Heath (Mar. 7, 1997), Lucas App. No. L-96-288; McMaken v. McMaken (1994), 96 Ohio App.3d 402, 404;Hager v. Hager (1992), 79 Ohio App.3d 239, 244.
 {¶ 18} A "domiciliary residence," or domicile, is more than a mere residence. Snelling v. Gardner (1990), 69 Ohio App.3d 196, 201. A domicile is not only a place to *Page 7 
live; it is a fixed, permanent home. McMaken, at 404; Hager, at 244. Consequently, while an individual may have several residences, she can have only one domicile. McMaken, at 405; Hager, at 244;Snelling, at 201. A person does not lose that domicile until she acquires a new one. Holtz v. Holtz, Greene App. No. 2005-CA-43,2006-Ohio-1812, at ¶ 18.
 {¶ 19} Only the plaintiff can know whether she intends a particular place to be her permanent home, and thus, trial courts must examine each plaintiff in order to divine her true intentions. Coleman, at 162. As the fact finder, the trial court is the sole judge of the plaintiff's credibility, and a reviewing court cannot usurp that role on appeal.Ortiz, at ¶ 36; Heath.
 {¶ 20} In the case at bar, Kelly filed her complaint for divorce on August 24, 2004. Consequently, in order for venue to lie in Franklin County, she had to prove that she was domiciled in Franklin County by May 26, 2004. As of that date, Kelly had a residence in Franklin County — her friends' home and, soon thereafter, the rental house. However, competent, credible evidence demonstrates that she did not form the intention of making Franklin County her permanent, fixed home until later. First, John testified that Kelly told him that she intended to live in the marital home in Henry County. According to John, Kelly asked him to release his dower rights so that she could refinance, purchase, and remain in the home. Kelly continued to pursue the refinancing — the first step necessary for her to stay in the marital residence — well beyond May 26, 2004.
 {¶ 21} Second, Kelly waited until late August to remove her daughters from their school in Henry County and to enroll them in a Franklin County school. Indeed, Kelly's emails to John demonstrate that, as late as mid-August, she planned for the children to *Page 8 
attend their Henry County school during the 2004-2005 school year. The trial court found this evidence particularly telling of Kelly's intentions because she cited the academic and cultural advantages of Columbus as one of only two reasons for moving.
 {¶ 22} Third, Kelly equivocated when testifying about her conversation with the guardian ad litem regarding her living arrangements. During his cross-examination of Kelly, John's attorney established that the guardian ad litem was present at the mediation. John's attorney then asked Kelly if she remembered telling the guardian ad litem that she intended to live in Henry County. Although Kelly testified that she did not remember saying so to the guardian ad litem, she then stated, "I also understand that I have a right to change my mind after mediations but prior to the trial of dropping my case, which I did." (Tr. at 85.) This statement led the trial court to doubt the veracity of Kelly's avowal that she decided in mid-May to make Franklin County her permanent residence. Indeed, Kelly's testimony suggests that she did not choose to make Franklin County her permanent home until after the mediation. Necessarily, then, Kelly's residence in Franklin County did not become her domicile until mid-August at the earliest.
 {¶ 23} We recognize that the record contains some evidence that supports Kelly's contention that she intended to make Franklin County her domicile in mid-May. Nevertheless, the trial court found the evidence to the contrary more credible, and we must defer to the trial court's credibility determination. Accordingly, we conclude that the trial court did not err in transferring this case to Henry County, and we overrule Kelly's second assignment of error. *Page 9 
 {¶ 24} For the foregoing reasons, we overrule Kelly's first and second assignments of error and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.
Judgment affirmed.
SADLER, P.J., and PETREE, J., concur.
[1] Additionally, we conclude that the admission of the disputed evidence did not violate Loc.R. 22(C) of the Franklin County Court of Common Pleas, Division of Domestic Relations, which states that, "[s]tatements made during mediation are confidential and shall be considered compromise negotiations and not admissible as evidence pursuant to Evidence Rule 408." Because the prohibition in Loc.R. 22(C) turns upon Evid.R. 408, we need not conduct a separate analysis of Kelly's arguments under the local rule. *Page 1