COLEMAN, APPELLANT, *v.* COLEMAN, APPELLEE.

[Cite as Coleman v. Coleman (1972), 32 Ohio St. 2d 155.]

(No. 72-201—Decided December 15, 1972.)

156

*Miss Patricia A. Vance,* for appellant.
No appearance for appellee.

STERN, J.   This case involves the constitutionality of the first sentence of R. C. 3105.03, which provides:

"Except in an action for alimony alone, the plaintiff in actions for divorce and annulment shall have been a resident of the state at least one year immediately before filing the petition."   This sentence, among other things, creates a substantive one-year durational residency requirement for all residents of Ohio who desire to obtain a *divorce* decree from Ohio courts.   At the time of filing, appellant did not meet this requirement.[1]

---

[1]As indicated in the statement of facts, plaintiff-appellant had not been a resident of Ohio for one year prior to August 21, 1970.   She did allege in her complaint that she had been a resident of Ohio since December 1969, and it is thus clear that appellant now meets the one-year durational residency requirement.   We do not, however, feel that this renders the constitutional issue moot.   Appellant currently has obtained service upon the appellee, and the potential problems of recapturing jurisdiction, should we dismiss, are such as to persuade us to retain jurisdiction.   See *Place* v. *Place* (Vt. 1971), 278 A. 2d 710, 711.

There is little question that the one-year durational residency requirement imposes: (1) that the person be a resident of Ohio, and (2) that the person have been a resident of Ohio at least one year immediately before filing the petition. In *Shapiro* v. *Thompson* (1969), 394 U. S. 618, 634, the Supreme Court of the United States, in holding that a one-year durational residency requirement relating to receiving welfare assistance was an unconstitutional denial of equal protection and due process, rejected the traditional "rational relationship" test in favor of a "compelling governmental interest" test.[2]

Subsequent to *Shapiro*, the question arose as to how much significance should be given the *nature* of the privilege or right being withheld during the qualifying period. The Supreme Court, in *Dunn* v. *Blumstein* (1972), 405 U. S. 330, 338, 31 L. Ed. 2d 274, after holding that the "compelling state interest" test must be met by any statute which places a condition on the exercise of the right to *vote*, noted that "this exacting test is appropriate for another reason * * * the durational residence requirement directly impinges on the exercise of a second fundamental personal right, the right to travel."

After noting that " 'freedom to travel throughout the United States has long been recognized as a basic right under the Constitution,' " and that "freedom to travel includes the 'freedom to enter and abide in any state in the Union,' " the court, in regard to the nature of the right or privilege being withheld, stated, at page 339:

---

[2]The court stated at page 634:

"* * * we reject appellant's argument that a mere showing of a rational relationship between the waiting period and these four admittedly permissible state objectives will suffice to justify the classification. * * * The waiting-period provision denies welfare benefits to otherwise eligible applicants solely because they have recently moved into the jurisdiction. But in moving from state to state or to the District of Columbia appellees were exercising a constitutional right, and any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional."

"It is irrelevant whether disenfranchisement or denial of welfare is the more potent deterrent to travel. *Shapiro* did not rest upon a finding that denial of welfare actually deterred travel. Nor have other 'right to travel' cases in this court always relied on the presence of actual deterrence. In *Shapiro* we explicitly stated that the compelling state interest test would be triggered by 'any classification which serves to *penalize* the exercise of that right [to travel] * * *.' "

The court concluded, at page 342, that:

"* * * durational residence laws must be measured by a strict equal protection test: they are unconstitutional unless the state can demonstrate that such laws are '*necessary* to promote a *compelling* governmental interest.' "

The Supreme Court of the United States, in *Shapiro, supra,* at page 638, noted, in footnote 21, that durational residency requirements may "promote compelling state interest on the one hand, or, on the other, may not be penalties upon the exercise of the constitutional right of interstate travel." We must then examine the Ohio one-year durational residency requirement as applied to divorce in this light.

In both *Shapiro* and *Dunn,* the court found that the durational residency requirements constituted penalties upon the exercise of the right of interstate travel. The penalty was that the person who exercised the right to travel was temporarily deprived of the privilege of receiving welfare and the right to vote. The privilege to receive welfare and the right to vote, however, are different from the privilege to obtain a divorce.

Welfare represents the only means for some persons to "obtain the very means to subsist—food, shelter, and other necessities of life" (*Shapiro, supra,* at 627); the right to vote for candidates for public office and issues is a basic constitutional right afforded by the federal and state constitutions.

The privilege of obtaining a divorce is not a basic need, *Whitehead* v. *Whitehead* (Hawaii 1972), 492 P. 2d

939, 945,[3] nor, in this instance[4] is it surrounded by any urgent need.[5]

Divorce is a creature of state statute, and the power of the General Assembly over the entire subject of marriage, as a civil status, and its dissolution, is unlimited except as restricted by the state and federal constitutions. We hold that a person's right to interstate travel is not penalized by the requirement of R. C. 3105.03.

Further, the state does have a compelling interest[6] in

[3]In upholding the one-year durational residency requirement imposed by the Hawaii divorce law (HRS § 580-1), the Hawaii Supreme Court felt that the following factors were controlling in *Shapiro*: (1) That the requirement was specifically designed to exclude certain persons, (2) that the relief being withheld was a need for "basic necessities of life which were immediate and could not be postponed," and (3) that "the efficacy of the requirement accomplishing its objective was great." 492 P. 2d 939, 944. The court concluded that the Hawaii requirement was concerned with "the establishment of domicile," and that "divorce can wait." *Id.*, at 945.

[4]There is no indication that appellant was compelled to travel to Ohio prior to filing for a divorce, nor was she brought here by her spouse. To allow one spouse to travel away from the other, and obtain a "quickee" divorce in a state which has no interest in their marital affairs and in which the grounds for divorce did not occur, would place a significant burden upon the remaining spouse, both economically and mentally, thereby reducing the chance of reconciliation and increasing the chance of a hastily conceived divorce.

[5]Had appellant felt an urgent need for a divorce she could have applied for it before moving from New York. She was not denied access to Ohio courts, and indeed, the court granted temporary restraint and custody orders, thus affording those privileges despite her insufficient residency for divorce. The General Assembly has also afforded a means whereby she can obtain both support as well as a legal separation, on lesser grounds, R. C. 3105.17, thereby allowing her to provide the basic needs for both herself and the children without having been a resident of Ohio for one year, for an action in alimony alone is exempted from the durational residency requirement of R. C. 3105.03. See *Wymelenberg* v. *Syman, supra* (328 F. Supp. 1353).

[6]In *Shapiro* v. *Thompson: Logical Extensions and Possible Progeny,* VI SUFFOLK L. R. 600, 609, 610, six reasons are set forth as possible justification for durational residency requirements imposed upon divorce applicants: They are: (1) A deterrent to those with marital problems from entering the state, (2) a positive reinforcement to reconcilia-

overseeing its divorce and marriage laws. As stated in *Boddie* v. *Connecticut*[7] (1970), 401 U. S. 371, 376, 383, "marriage involves interests of basic importance in our society," and is "a fundamental human relationship." This does not dispute the established fact that states alone have the prerogative of creating and overseeing this important institution. *Pennoyer* v. *Neff* (1877), 95 U. S. 714, 722, 734; *Boddie* v. *Connecticut, supra*; *Wymelenberg* v. *Syman* (1971), 328 F. Supp. 1353; *Place* v. *Place* (Vt. 1971), 278 A. 2d 710; *Whitehead* v. *Whitehead, supra*.

Black's Law Dictionary (4 Ed.) defines "compel" as "to force * * * to oblige." A compelling state interest therefore must be one which the state is forced or obliged to protect. In exercising the prerogative of prescribing and enforcing laws governing the marital status only of *residents* of Ohio, this state assumes the obligation of insuring their availability to residents of Ohio, and, lacking jurisdiction to prescribe or enforce marriage laws for nonresidents, Ohio must insure that its laws are not applied to nonresidents. The effect which such laws will have over

tion and maintenance of marital stability, (3) an assurance of domicile and residence, (4) a protection of the state's reputation, (5) a guarantee for the welfare of the children, and (6) an interest in assuring that its decrees and judgments would stand up in foreign courts on collateral attack. These and additional reasons pertaining to divorce are also discussed in *Place* v. *Place* (1971), 278 A. 2d 710, in which the Vermont Supreme Court upheld its six-month durational residency requirement; *Whitehead* v. *Whitehead* (1972), 492 P. 2d 939, in which the Hawaii Supreme Court upheld Hawaii's one-year durational residency requirement; and *Wymelenberg* v. *Syman* (1971), 328 F. Supp. 1353, in which the District Court held Wisconsin's two-year requirement to be unconstitutional.

[7]*Boddie* involved welfare recipients who were barred from having their divorce actions *heard* because of the refusal of the Connecticut court officers to accept their complaints for filing without the prepayment of court costs. (See 286 F. Supp. 968.) No such issue presents itself herein, and the validity of then exising Connecticut General Statute Section 46-15, which, except in certain circumstances, provides a three-year durational residency requirement, was not an issue in that case. It should also be noted that appellant herein was permitted to have a hearing despite her inability to give a security or to make a cash deposit for costs.

the stability of marriage cannot be ignored, and, inasmuch as the privilege to marry would not have been granted had the state not intended such relationship to be harmonious and long standing, the state has an obligation to uphold marital harmony. Marriage is a device intended to perpetuate family groups within the larger social entities of which each marital unit is a part.

The General Assembly, in enacting R. C. 3105.03, was aware of the increased mobility of persons within this country, and it is not necessary that applicants for divorce have been married in Ohio, or that the cause of action occur in Ohio, or that both parties reside in Ohio. There is no evidence, as existed in *Shapiro, supra,* that the Ohio one-year durational residency requirement was designed to prevent unwanted persons from entering the state. This requirement has existed since 1853. 51 Ohio Laws 379. See *Whitehead* v. *Whitehead, supra.* Indeed, the Ohio one-year durational residency requirement does not prevent persons wanting a divorce from moving to Ohio; it even excepts from the one-year residency requirement actions for alimony alone, thus providing for basic needs which might exist.[8] It does provide a reasonable[9] deferral of application for divorce, thus encouraging a new examination of the marriage to see if the move itself has resolved the differences. *Place* v. *Place, supra* (278 A. 2d 710).

There is no question that R. C. 3105.03 does pro-

---

[8] R. C. 3105.18 provides that:

"The court of common pleas may allow alimony as it deems reasonable to either party, having due regard to property which came to either by their marriage, the earning capacity of either and the value of real and personal estate of either, at the time of the decree.

"Such alimony may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, as the courts deems equitable."

[9] We see no need to delve into the subject of whether the line could more appropriately have been drawn at some period of time less than one year, for, as stated by Mr. Justice Blackmun in his concurring opinion in *Dunn* v. *Blumstein, supra* (405 U. S. 330), at page 363; "if 30 days pass constitutional muster, what of 35 or 45 or 75?" In view of the "intention" to be ascertained by the Ohio requirement, the General Assembly's selection of one year is not unreasonable.

mote the state's obligation to insure that its laws regarding marriage and its final dissolution are not exercised over nonresidents. However, it is argued that this obligation is accomplished by the first segment of the residency requirement (*i. e.*, that a person be a resident), and that residency can be established by some other less intrusive manner than a one-year durational residency requirement. The word "resident," as used in R. C. 3105.03, means one who possesses a domiciliary residence, a residence accompanied by an *intention* to make the state of Ohio a permanent home. Such an intention is known only by the individual, which intention, naturally, is subject to honest change from time to time.

Although such an intention may be expressed by an individual in objective manners, these expressions may merely reflect a passing convenience for the individual. Thus, in each instance, the courts would be required to examine each individual who filed for a divorce to determine whether he or she indeed has the "intention" of making Ohio a permanent home.

In view of the numerous possible combinations of objective expressions,[10] and the fact that those who do lead a transitory life might never accumulate that assortment of objective manifestations of intent that would convince an individual judge to exercise jurisdiction, we conclude that the state has used the least restrictive manner of insuring that its divorce laws are not utilized by nonresidents of Ohio, and thus do not interfere with a marital relationship over which it has no jurisdiction and in which it has no interest.

We hold that the one-year durational residency requirement of R. C. 3105.03 does not penalize the individual constitutional right of freedom to travel, and that the state

---

[10]Although the court in *Dunn* v. *Blumstein, supra* (405 U. S. 330), at page 345 *et seq.*, rejected the argument that, absent durational residency requirements, many persons would *falsely* swear to their status as a resident, the court noted that alternative methods of checking (*i. e.*, use of computers and voters registration certificates) were available. No such alternative is available herein.

has a compelling interest in the civil status of marriage which, in the least restrictive manner, is accomplished by the statute.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, LEACH and BROWN, JJ., concur.

SCHNEIDER, J., concurs in paragraph two of the syllabus and in the judgment.

SCHNEIDER, J., concurring. I concur based on the particular facts of the case. Apparently, the grounds for divorce arose in New York. The record is silent as to the compulsion of plaintiff to settle in Ohio. But I do not understand the decision as foreclosing its re-examination if, for example, after establishing residence here, one of the married partners commits an act or acts which constitute grounds for divorce.