BARTH, APPELLANT, *v.* BARTH, APPELLEE.

[Cite as *Barth v. Barth,* 113 Ohio St.3d 27, 2007-Ohio-973.]

28

(No. 2006–0896—Submitted December 13, 2006—Decided March 21, 2007.)

MOYER, C.J.

{¶ 1} The Eighth District Court of Appeals has certified this case pursuant to Section 3(B)(4), Article IV of the Ohio Constitution and App.R. 25. The Eighth District Court of Appeals found its judgment to be in conflict with the judgments of the Second District Court of Appeals in *McMaken v. McMaken* (1994), 96 Ohio App.3d 402, 645 N.E.2d 113, and the Sixth District Court of Appeals in *Heath v. Heath* (Mar. 7, 1997), Lucas App. No. L–96–288, 1997 WL 103832.

{¶ 2} The certified issue is "[w]hether the six-month residency requirement for jurisdiction set forth in R.C. 3105.03 is a strict test or [whether] a court [may] examine one party's intent and the other party's fraudulent inducement in abandoning Ohio as their domicile." We hold that R.C. 3105.03 creates a strict test of residency and that to file a complaint for divorce in Ohio, a plaintiff must have been a resident of Ohio for six months immediately prior to the filing of the complaint. Further, in determining residency for purposes of R.C. 3105.03, a court shall not consider the motives of either spouse with regard to his or her establishment of residency outside of Ohio.

{¶ 3} Some facts are in dispute. However, both parties agree that Jeffrey Barth and Andrea Barth were married in 1989. They resided in Ohio from 1994 until Jeffrey accepted a job in California, where he began working in February 2004. Andrea and Jeffrey had visited California in January to look for a house, visit churches, and familiarize themselves with various communities. Andrea and

the children visited Jeffrey in April to continue the search. In June 2004, the Barths sold their Westlake, Ohio residence and shipped their household belongings to California.

{¶ 4} Andrea and the children arrived in California in July 2004 and moved into Jeffrey's rented California residence. Andrea arranged to have utilities connected there, including cable and telephone services, subscribed to a local newspaper, applied for library cards, changed addresses on credit cards, enrolled the children in swimming lessons and a sport camp, sent a change-of-address announcement, and scheduled a medical appointment for her daughter.

{¶ 5} In August 2004, Jeffrey divulged to Andrea an intimate relationship with another woman and previous extramarital affairs. Within two days of this confession, Andrea and the children returned to Ohio, where she filed for divorce on August 24, 2004. Jeffrey filed for divorce in California on August 25.

{¶ 6} Jeffrey answered Andrea's complaint and moved to dismiss the complaint, stating that the Ohio court lacked subject-matter jurisdiction. Jeffrey argued that Andrea did not meet the residency requirement in R.C. 3105.03 and therefore could not file for divorce in Ohio. R.C. 3105.03 states: "The plaintiff in actions for divorce * * * shall have been a resident of the state at least six months immediately before filing the complaint."

{¶ 7} The trial court adopted the magistrate's recommendation that the motion to dismiss be denied. The magistrate had applied former R.C. 3109.22, repealed by 2004 Sub.S.B. No. 185, which addressed a court's jurisdiction regarding parenting determinations, and found that the children's connections to Ohio were far more significant than those to California, where the children had resided for only a few weeks. Further, the magistrate concluded "that despite [Andrea's] traveling to California and staying for forty days, Plaintiff could not have formulated the necessary intent to abandon her domicile in Ohio or to adopt a domicile in California because she did not have the prerequisite knowledge of the facts to formulate legitimate intent."

{¶ 8} In a split decision, the court of appeals affirmed the judgment of the trial court, holding that jurisdiction was established for the same reasons articulated in the magistrate's opinion: "the present Ohio connections are far more pervasive than any California ties," and Andrea Barth "was incapable of forming an actual intent to make California her domicile * * * because she was without knowledge of facts sufficient to form a reliable and specific intent." *Barth v. Barth*, Cuyahoga App. No. 86473, 2006-Ohio-1094, 2006 WL 562188, ¶ 21–22.

{¶ 9} R.C. 3105.03, not former R.C. 3109.22, governs residency requirements for divorce actions in Ohio. The grounds and procedures for obtaining a divorce in Ohio are purely statutory. "Divorce is a creature of state statute, and the power of the General Assembly over the entire subject of marriage, as a civil

status, and its dissolution, is unlimited except as restricted by the state and federal constitutions." *Coleman v. Coleman* (1972), 32 Ohio St.2d 155, 159, 61 O.O.2d 406, 291 N.E.2d 530.

{¶ 10} As this court has repeatedly stated, "It is a cardinal rule of statutory construction that where the terms of a statute are clear and unambiguous, the statute should be applied without interpretation."[1] " ' "To construe or interpret what is already plain is not interpretation but legislation, which is not the function of the courts." ' "[2]

{¶ 11} The statute in this case is clear: in order to file for divorce in Ohio, the plaintiff must have been an Ohio resident for six months immediately before the filing of the complaint. Therefore, the statute must be applied strictly and without interpretation.

{¶ 12} We have previously defined "resident" as used in R.C. 3105.03: "The word 'resident' * * * means one who possesses a domiciliary residence, a residence accompanied by an *intention* to make the state of Ohio a permanent home." (Emphasis added.) *Coleman*, 32 Ohio St.2d 155, 162, 61 O.O.2d 406, 291 N.E.2d 530. Clearly, during the 40 days that Andrea lived in California, she was not a resident of Ohio.

{¶ 13} The following facts are not disputed: Prior to learning of Jeffrey's extramarital activities, the Barth family was planning to remain in California. Jeffrey moved to California and began a new job in February 2004. In the summer of 2004, the Barths sold the family residence in Ohio and moved all of the family belongings to California. Andrea and the children arrived in California in July 2004 and moved into a rented residence with Jeffrey. Andrea quickly made arrangements for a new life in California: she had utilities connected, subscribed to a local newspaper, applied for library cards, changed addresses on credit cards, enrolled the children in activities, sent a change-of-address announcement, and scheduled a medical appointment. At this time, Andrea Barth was not a resident of the state of Ohio—she was living in California and intended to make California her home.

{¶ 14} In August 2004, after learning of Jeffrey's extramarital affairs, Andrea returned to Ohio with her children, where she found a new place to live and re-

---

1. *Wingate v. Hordge* (1979), 60 Ohio St.2d 55, 58, 14 O.O.3d 212, 396 N.E.2d 770, citing *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105–106, 65 O.O.2d 296, 304 N.E.2d 378.

2. *Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Assn.* (1994), 69 Ohio St.3d 521, 524, 634 N.E.2d 611, quoting *Thompson Elec., Inc. v. Bank One, Akron, N.A.* (1988), 37 Ohio St.3d 259, 264, 525 N.E.2d 761, quoting *Iddings v. Jefferson Cty. School Dist. Bd. of Edn.* (1951), 155 Ohio St. 287, 290, 44 O.O. 294, 98 N.E.2d 827.

established her life in Ohio. Andrea was then living in Ohio and intended to make Ohio her home. As a result, she began a new residency period in Ohio.

{¶ 15} However, Andrea's residency in Ohio began upon her return to Ohio in August 2004. Andrea Barth could not have maintained her Ohio residency while she was living in California. R.C. 3105.03 requires that a plaintiff in a divorce action be a resident of Ohio for six months *immediately* prior to the filing of the complaint. Andrea moved to California in July 2004 and then returned to Ohio in August 2004. As a result, when Andrea filed her complaint for divorce in Ohio on August 24, 2004, she had been residing in Ohio for only a few days.

{¶ 16} Andrea argues, and the trial court and court of appeals both agreed, that she could not establish residency in California because she did not have the requisite factual information to form intent. However, there is no legal basis for this conclusion. All of Andrea's conduct prior to her decision to return to Ohio manifested her intent to be a resident of California. When she became informed of her husband's infidelity, she decided to return to Ohio. A person may intend to create a residence without awareness of every available fact regarding the decision that bears on that choice. We are compelled to conclude that Andrea Barth did not meet the residency requirement of R.C. 3105.03 and that the trial court lacked statutory authority to assume jurisdiction of her divorce action.

{¶ 17} For the reasons stated, we reverse the judgment of the court of appeals.

Judgment reversed.

PETREE, O'CONNOR and LANZINGER, JJ., concur.

LUNDBERG STRATTON, J., concurs separately.

O'DONNELL, J., concurs in judgment only.

PFEIFER, J., dissents.

CHARLES R. PETREE, J., of the Tenth Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

_____

LUNDBERG STRATTON, J., concurring.

{¶ 18} This case presents a tempting fact pattern for accepting the appellee's "intent" interpretation. Appellee alleges that her husband lured her to California upon false pretenses solely to establish residency and presumably some tactical advantage by filing for divorce in California. The court of appeals held that fraud negated appellee's intent to make California her domicile; her residency in Ohio was therefore uninterrupted, meeting the six-month requirement.

{¶ 19} We have concluded that intent is not relevant, nor apparently is fraud in the inducement; only *actions* can establish residency. Fraud in the inducement is a tempting argument, but to adopt that exception would create a difficult burden for courts that now have a bright-line test to apply. However, the bright-line test can also lead to inequities, as this case demonstrates. As the residency requirement is a pure creature of statute, the legislature may wish to consider an exception to the residency requirement in cases of fraud. Until then, we are bound by the clear language of the statute. Therefore, I concur in the majority's opinion.

---

PFEIFER, J., dissenting.

{¶ 20} The facts of this case distinguish it from the cases it is alleged to conflict with. I would find that no conflict between appellate districts exists and would affirm the judgment of the appellate court and trial court.

---

Gallagher Sharp and Timothy J. Fitzgerald, for appellant.

Wolf & Akers, L.P.A., and Deborah Akers–Parry, for appellee.

John J. Ready, guardian ad litem.