PROUSE, DASH & CROUCH, L.L.P., APPELLANT, v. DIMARCO ET AL., APPELLEES.

[Cite as *Prouse, Dash & Crouch, L.L.P., v. DiMarco,*
116 Ohio St.3d 167, 2007-Ohio-5753.]

(No. 2006–0957—Submitted May 1, 2007—Decided October 31, 2007.)

———————

PFEIFER, J.

{¶ 1} The issue in this case is whether the trial court had personal jurisdiction over appellees, Bruce DiMarco ("DiMarco"), an American citizen, and his wife Ji Hae Linda Yum DiMarco ("Yum"), a Canadian citizen, with regard to claims brought by appellant, Prouse, Dash & Crouch, L.L.P. ("Prouse"), a Canadian law firm. Because we conclude that DiMarco was a resident of Ohio, we hold that the trial court had personal jurisdiction over him, and we reverse the judgment of the court of appeals regarding DiMarco. And because the court of appeals did not consider all the facts when it determined that the trial court did not have jurisdiction over Yum, we vacate the court of appeals' judgment regarding Yum. We remand the cause to the court of appeals to reexamine whether the trial court had jurisdiction over Yum and to address the other issues that were raised by DiMarco and Yum that the court declared moot.

{¶ 2} For many months prior to July 1999, DiMarco and Yum resided at 5810 Gilbert Avenue, in Parma, Ohio. In July 1999, upon learning that he was the subject of a Securities and Exchange Commission investigation, DiMarco left Ohio and went to Ontario, Canada. DiMarco was subsequently arrested in Canada.

{¶ 3} In the fall of 2000, Yum contacted Prouse to obtain legal representation for claims arising from an assault against DiMarco that allegedly occurred while he was in a Canadian detention center. Prouse subsequently represented DiMarco in several other legal matters, including opposing Canada's attempt to extradite him. Although Prouse and DiMarco did not have a written contract with appellees concerning legal fees, the trial court ruled, and the record supports the conclusion, that they had orally agreed to an hourly rate.

{¶ 4} As the bill for these services grew and remained unpaid, DiMarco repeatedly assured Prouse of his ability to pay, promising that if it were necessary, he would sell a house that he owned in Parma, Ohio. The house was actually owned by Yum, having been transferred to her by DiMarco in July 1999. Prouse requested a mortgage on the Parma property to secure payment. DiMarco denied this request and made little apparent effort to pay the legal bills. Eventually, Prouse claimed that DiMarco owed the firm 250,785.71 Canadian dollars, at which point, the firm ceased to provide legal services to DiMarco and brought suit for compensation in Cuyahoga County. The trial court granted Prouse's motion for prejudgment attachment against the Parma property. Subsequently, the court entered judgment against DiMarco and Yum in the amount of $206,342.97 for breach of contract. On appeal, the court of appeals reversed, holding that under Ohio's long-arm statute, the trial court had no jurisdiction over DiMarco or Yum. We accepted Prouse's discretionary appeal.

{¶ 5} It is axiomatic that Ohio courts can exercise jurisdiction over a person who is a resident of Ohio. Accordingly, if DiMarco and Yum were Ohio residents,

there is no need to analyze whether they were also subject to jurisdiction pursuant to R.C. 2307.382, Ohio's long-arm statute.

{¶ 6} The term "resident" appears in many sections of the Ohio Revised Code. See, e.g., R.C. 3773.33 ("To be eligible for appointment as a voting member [of the Ohio athletic commission], a person shall be a qualified elector and a resident of the state for not less than five years * * * "); R.C. 340.02 (members of boards of alcohol, drug addiction, and mental health services "shall be residents of the district"); R.C. 2151.06 ("a child has the same residence or legal settlement as his parents"). Many statutes that set forth who is eligible to hold public office use the term "resident." See, e.g., R.C. 3.15 ("Each member of the general assembly * * * shall be a resident of the district the member represents"); R.C. 4911.04 ("The consumers' counsel shall be a resident of this state * * * "); R.C.1907.13; R.C. 2701.04; and R.C. 1901.06.

{¶ 7} Despite these many uses of the term "resident," the term itself is not defined generally in the Revised Code. It seems obvious to us that the General Assembly intentionally did not define the term "resident" because of the many different uses to which the term is put. Nevertheless, this court has defined the term "resident" when the term was used in a statute that did not define the term. For example, "as used in R.C. 3105.03," which relates to divorces and annulments, "[t]he word 'resident' * * * means one who possesses a domiciliary residence, a residence accompanied by an intention to make the state of Ohio a permanent home." *Coleman v. Coleman* (1972), 32 Ohio St.2d 155, 162, 61 O.O.2d 406, 291 N.E.2d 530. For purposes of obtaining a driver's license, a "resident" is a person who "currently either lives within Ohio [or who] has left Ohio, for temporary purposes only, with a specific intention to return to Ohio to live." Ohio Adm.Code 4501:1–1–35. See R.C. 4507.01 (" 'Resident' means a person who, in accordance with standards prescribed in rules adopted by the registrar, resides in this state on a permanent basis").

{¶ 8} One definition of the term "resident" in the Revised Code is in a statute that sets forth rules for determining which students are entitled to state subsidy of their public higher education. R.C. 3333.31(A). Although R.C. 3333.31 charges the Ohio board of regents with promulgating rules defining resident status for purposes of receiving the lower in-state tuition rate, it also lists several factors to be considered in making the determination. Among these factors is whether the student is "in the state primarily for the purpose of attending a state-supported or state-assisted institution of higher education," "the source or sources of support of the student," the student's residence prior to enrollment, "evidence of intention to remain in the state after completion of studies, or such other factors as the Ohio board of regents may deem relevant." Id. For these purposes, the board of regents has defined a "resident" as "any person who

maintains a twelve-month place or places of residence in Ohio, who is qualified as a resident to vote in Ohio and receive state public assistance, and who may be subjected to tax liability under section 5747.02 of the Revised Code, provided such person has not, within the time prescribed by this rule, declared himself or herself to be or allowed himself or herself to remain a resident of any other state or nation for any of these or other purposes." Ohio Adm.Code 3333–1–10.

{¶ 9} The General Assembly has chosen not to define the term "resident" generally because of the many uses to which the term is put. Accordingly, we will not do so either. Further, it is unnecessary to the resolution of this case. Whatever the exact definition of "resident," it is clear to us that DiMarco was a resident of Ohio for personal-jurisdiction purposes until the day he fled to Canada to evade criminal investigation or prosecution. Prior to fleeing, DiMarco had lived in Parma for many months in a house that Yum continues to own. DiMarco and Yum married in Ohio. While living in Ohio, DiMarco acquired an Ohio driver's license, which it is not lawful to acquire unless you are a "resident" or "temporary resident." R.C. 4507.01 and 4507.08. The question becomes: Did DiMarco's calculated flight to Ontario change his resident status? That is, did he cease to be a resident of Ohio, subject to the personal jurisdiction of Ohio's courts, and become a legal resident of Ontario? We conclude that he did not.

{¶ 10} The case law, statutes, and rules are in accord that the intention of a person is a significant factor in determining where he or she legally resides. In *Barth v. Barth,* 113 Ohio St.3d 27, 2007-Ohio-973, 862 N.E.2d 496, at ¶ 12–16, this court concluded that for purposes of R.C. 3105.03, a person's status as an Ohio resident is terminated when her actions manifest her intent to make her home in another state. If DiMarco had moved to Canada to take a job or for another legitimate reason that showed his intent to remain there, it is likely that his resident status would have changed. See id. at ¶ 13. But DiMarco did not live in Ontario with the purpose of making it his home; he lived there in an attempt to evade criminal or civil prosecution. Though he lived in Ontario with Yum, DiMarco did so based on a visa that labeled him a visitor. DiMarco traveled to Ohio periodically to comply with Canadian visa requirements, which are violated when a visitor remains in the country for longer than six consecutive months. DiMarco knew that he could not remain in Canada permanently; he could not, therefore, intend to remain there permanently and could not intend to make Canada his home. DiMarco did not obtain Canadian citizenship or a status in Canada other than of visitor. His last established permanent residence was in Ohio. He manifested some intent to retain residency in Ohio, at least in regard to Canadian visa requirements. The simple fact that he lives in Ontario as a visitor is not enough to terminate his established status as an Ohio resident. We conclude that he did not manifest an intent to remain in Canada permanently.

{¶ 11} Moreover, although not directly on point, we find the factors for determining resident status set forth in R.C. 3333.31 to be instructive. Students from out of state who are "in the state primarily for the purpose of attending a state-supported or state-assisted institution of higher education" have that primary purpose held against them. DiMarco appears to be in Canada primarily to avoid American authorities; we hold that against his attempt to assert Canadian residence. A student's out-of-state "source or sources of support" is another factor held against a student seeking Ohio residence. DiMarco's putative sources of support are in the United States; as a visitor in Canada, he is not permitted to work there. A student's residence prior to enrollment is a factor held against a student seeking Ohio residence. DiMarco was an Ohio resident prior to seeking what is essentially asylum in Canada. A student's "evidence of intention to remain in the state after completion of studies" is a factor considered in the favor of a student seeking status as an Ohio resident. Nothing in the record suggests that DiMarco can remain permanently in Canada, and therefore he cannot intend to remain there permanently.

{¶ 12} We acknowledge that the decision is a close one. There is one factor predominantly in DiMarco's favor: he continues to live in Canada, a circumstance that suggests he is not an Ohio resident. In aggregate, we consider all of the other factors that are discussed above to be more legally significant. We hold that the Cuyahoga County Court of Common Pleas has personal jurisdiction over DiMarco. Therefore, we reverse the court of appeals' judgment with regard to DiMarco.

{¶ 13} Whether the trial court had personal jurisdiction over Yum is a completely different issue. She is a Canadian citizen and can legally remain in Canada permanently. There is no allegation that she was subject to indictment or arrest or wanted for questioning in the United States. Thus it cannot be said that she fled to Canada to avoid federal authorities. She moved to Canada for two legitimate reasons: to be with her husband and to be near her family, especially her ailing parents. None of the factors that lead us to conclude that DiMarco retained his status as an Ohio resident pertain to Yum. Accordingly, we conclude that she was not an Ohio resident.

{¶ 14} Our next inquiry, therefore, is whether the trial court had personal jurisdiction over Yum pursuant to R.C. 2307.382, Ohio's long-arm statute. "When determining whether a state court has personal jurisdiction over a nonresident defendant, courts are obligated to determine (1) whether the state's 'long-arm' statute and applicable rule of civil procedure confer personal jurisdiction, and if so, (2) whether granting jurisdiction under the statute and rule would deprive the defendant of the right to due process of law under the Fourteenth Amendment to the United States Constitution." *Clark v. Connor* (1998), 82 Ohio St.3d 309, 312,

695 N.E.2d 751, citing *U.S. Sprint Communications Co., Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 183–184, 624 N.E.2d 1048. Although the court of appeals addressed this issue, it focused almost exclusively on whether Yum's ownership of the property in Parma was sufficient to satisfy R.C. 2307.382. We remand the cause to the court of appeals for a determination of whether R.C. 2307.382 was met with regard to Yum based on all the relevant facts.

{¶ 15} For the foregoing reasons, we reverse in part and vacate in part the judgment of the court of appeals and remand the cause to the court of appeals to address the remaining issues that were raised by appellees and to determine whether the trial court had personal jurisdiction over Yum.

Judgment reversed in part
and vacated in part,
and cause remanded.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

LANZINGER, J., concurs in judgment only.

———

Lindner & Jordan, L.L.P, and Daniel F. Lindner, for appellant.

Mancino, Mancino & Mancino and Paul Mancino Jr., for appellees.