PROUSE, DASH & CROUCH, L.L.P., Appellee,

v.

DiMARCO et al., Appellants.

[Cite as *Prouse, Dash & Crouch, L.L.P., v. DiMarco,*
175 Ohio App.3d 467, 2008-Ohio-919.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 86324.

Decided March 6, 2008.

468

Lindner & Jordan, L.L.P., and Daniel F. Lindner, for appellee.

Paul Mancino Jr., for appellant.

ANTHONY O. CALABRESE JR., Judge.

{¶ 1} Upon remand from the Ohio Supreme Court, we are asked to determine whether the trial court had personal jurisdiction over defendant-appellant Ji Hae Linda Yum DiMarco (Yum) pursuant to R.C. 2307.382, Ohio's long-arm statute. We are also asked to address the assignments of error that were declared moot in our original opinion. See *Prouse, Dash & Crouch, L.L.P. v. DiMarco*, 116 Ohio St.3d 167, 2007-Ohio-5753, 876 N.E.2d 1226, reversing in part and vacating in part *Prouse, Dash & Crouch, L.L.P. v. DiMarco*, Cuyahoga App. No. 86324, 2006-Ohio-1538, 2006 WL 802788 (*Prouse I* ).

I

{¶ 2} On March 30, 2006, we reversed the trial court's judgment in favor of Canadian law firm Prouse, Dash & Crouch, L.L.P. ("Prouse"), finding that the court lacked personal jurisdiction over defendant-appellant Bruce DiMarco ("DiMarco"). However, on October 31, 2007, the Ohio Supreme Court, after reviewing *Prouse I*, found that the trial court had personal jurisdiction over DiMarco. We must now determine whether the trial court had personal jurisdiction over Yum, who is DiMarco's wife, and then determine whether the judgment in favor of Prouse stands.

{¶ 3} The facts of this case were adequately discussed in *Prouse I*; however, a brief overview follows. In the summer of 1999, DiMarco learned that he was the subject of a Securities and Exchange Commission ("SEC") investigation, and he fled to Canada. At that time, he also transferred real property located at 5810 Gilbert Avenue, Parma, Ohio ("the Parma property"), to Yum. Yum, who is a Canadian citizen, went to Canada with DiMarco.

{¶ 4} Prouse was hired to represent DiMarco and Yum regarding various legal issues. When they did not pay Prouse as agreed, Prouse sued DiMarco and Yum and won a judgment for $206,342.97 in the Cuyahoga County Court of Common Pleas.

II

{¶ 5} The first assignment of error alleges that the court did not have personal jurisdiction over DiMarco or Yum. The Ohio Supreme Court ruled that the trial court properly exercised personal jurisdiction over DiMarco because he was a resident of Ohio. See *Prouse*, 116 Ohio St.3d 167, 2007-Ohio-5753, 876 N.E.2d 1226, at ¶ 9 (holding that "DiMarco's calculated flight to Ontario" did not change his resident status). The Ohio Supreme Court also held that Yum was not an

Ohio resident and left to us the question of whether Ohio's long-arm statute could reach her.

■ {¶ 6} "When determining whether a state court has personal jurisdiction over a nonresident defendant, courts are obligated to determine (1) whether the state's 'long-arm' statute and applicable rule of civil procedure confer personal jurisdiction, and if so, (2) whether granting jurisdiction under the statute and rule would deprive the defendant of the right to due process of law under the Fourteenth Amendment to the United States Constitution." *Clark v. Connor* (1998), 82 Ohio St.3d 309, 312, 695 N.E.2d 751, citing *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 183–184, 624 N.E.2d 1048.

{¶ 7} Ohio's long-arm statute, R.C. 2307.382, states as follows:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity;

(8) Having an interest in, using, or possessing real property in this state;

(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

{¶ 8} The R.C. 2307.382 factors apply to Yum in the following ways.

{¶ 9} Regarding (1), there is no evidence in the record showing that Yum transacted business in Ohio other than receiving title to and recording the deed of the Parma property.

{¶ 10} Regarding (2), there is no evidence that Yum contracted to supply goods or services in Ohio.

{¶ 11} Regarding (3), (4), (6), and (7), there is no evidence that Yum caused tortious injury in Ohio.

{¶ 12} Regarding (5), there is no evidence that Yum caused injury via breach of warranty in Ohio.

{¶ 13} Regarding (8), Yum allegedly owned the Parma property in Ohio.

{¶ 14} Regarding (9), there is no evidence that Yum contracted to insure anything in Ohio.

{¶ 15} Additionally, Civ.R. 4.3 states that courts may have personal jurisdiction over a nonresident of Ohio when certain enumerated factors apply. The factors are substantially similar to the R.C. 2307.382 factors, with the following addition: "(8) Living in the marital relationship within this state notwithstanding subsequent departure from this state, as to all obligations arising for spousal support, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in this state * * *." Because the instant case does not stem from obligations arising for spousal support, custody, child support, or property settlement, this factor does not apply to Yum.

{¶ 16} The second part of the personal-jurisdiction analysis deals with satisfying the demands of due process. "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95, quoting *Milliken v. Meyer* (1940), 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278. The Supreme Court further narrowed its definition of "minimum contacts" in *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283, when it held that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." What is critical to the due-process analysis as it relates to exercising personal jurisdiction "is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490.

{¶ 17} In *Prouse I,* we analyzed whether Yum's ownership of the Parma property was sufficient to satisfy R.C. 2307.382. However, we failed to consider any other facts from the record that may be relevant to the personal-jurisdiction analysis. As stated above, the only evidence that fits within the statutory parameters of R.C. 2307.382 and Civ.R. 4.3 is DiMarco's allegation that Yum owned the Parma property. We also note that Yum lived in Ohio with DiMarco at the Parma property when DiMarco transferred title to her, but she fled with DiMarco to Canada shortly after and remained, at all times, a Canadian citizen.

{¶ 18} R.C. 2307.382(C) states that "[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." Yum argues that the only nexus she had to Ohio was the Parma property and that according to R.C. 2307.382(C), only a cause of action arising from this property may be asserted against her. Prouse's claim for breach of contract, which essentially boils down to nonpayment, is unrelated to, and does not arise from, Yum's real property in Ohio. Yum further argues that the breach-of-contract issue should have been decided by a Canadian court and that, if Prouse won a favorable judgment, it could attempt to attach the Parma property to satisfy the Canadian judgment.

{¶ 19} Prouse, on the other hand, argues that the Parma property became a term of the contract for legal services between the parties, specifically as it related to payment of the outstanding balance due Prouse. Prouse argues that DiMarco repeatedly assured it of his ability to pay from the proceeds of the Parma property, and because of this assurance, Prouse continued to represent him despite DiMarco and Yum failing to pay their invoices. Prouse further argues that the fraudulent transfer occurred in Ohio and, as such, DiMarco and Yum sought the benefits and protections of Ohio laws, thus satisfying minimum contacts.

{¶ 20} After further review, we apply our holding in *Prouse I* to Yum, concluding that "there is no connection between Prouse's claims and [Yum's] interest in the Ohio property." See *Prouse I,* 2006-Ohio-1538, 2006 WL 802788, at ¶ 10–15. The trial court lacked personal jurisdiction over Yum. We sustain this assignment of error as it relates to Yum, reverse the trial court's judgment against Yum, and remand with directions to vacate all orders and entries regarding her.

{¶ 21} All remaining assignments of error will be analyzed as relates to DiMarco only.

## III

{¶ 22} In his second assignment of error, DiMarco argues that he was "denied due process of law when the court refused to dismiss or transfer this case

pursuant to the doctrine of forum non conveniens." Specifically, DiMarco argues that a Canadian court would have been more suited to hear this case.

{¶ 23} "The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055. See also *Chambers v. Merrell–Dow Pharmaceuticals, Inc.* (1988), 35 Ohio St.3d 123, 126, 519 N.E.2d 370 (holding that the "doctrine assumes that proper jurisdiction and proper venue lie in the court which plaintiff has chosen, and additionally presupposes the availability of another forum in which the defendant may be sued" [citations omitted] ). Additionally, we review forum-non-conveniens determinations for an abuse of discretion. Id.

{¶ 24} In *Chambers*, 35 Ohio St.3d at 127, 519 N.E.2d 370, the Ohio Supreme Court set forth the test for a forum-non-conveniens analysis:

> The criteria set forth in *Gilbert* and other United States Supreme Court decisions are to be applied flexibly, with each case turning on its own facts. *Williams v. Green Bay & Western Ry. Co.* (1946), 326 U.S. 549 [66 S.Ct. 284, 90 L.Ed. 311]. These factors may be divided into the private interests of the litigants and factors of public interest involving the courts and citizens of the forum. Important private interests include: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained." *Gilbert, supra*, at 508 [67 S.Ct. 839, 91 L.Ed. 1055]. The *Gilbert* court noted that "the plaintiffs' choice of forum should rarely be disturbed," id., particularly when the plaintiff has chosen his home forum. *Koster v. Lumbermens Mut. Cas. Co.* (1947), 330 U.S. 518, 524 [67 S.Ct. 828, 91 L.Ed. 1067]. However, in *Piper Aircraft Co. v. Reyno* (1981), 454 U.S. 235, 256 [102 S.Ct. 252, 70 L.Ed.2d 419], the court held: "Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference."
>
> Public interest factors to be considered include the administrative difficulties and delay to other litigants caused by congested court calendars, the imposition of jury duty upon the citizens of a community which has very little relation to the litigation, a local interest in having localized controversies decided at home, and the appropriateness of litigating a case in a forum familiar with the applicable law. *Gilbert, supra*, at 508–509 [67 S.Ct. 839, 91 L.Ed. 1055]. Additionally, the court in *Reyno, supra*, at 249–255 [102 S.Ct. 252, 70 L.Ed.2d 419], noted that the possibility of an unfavorable change in law upon dismissal

should not, standing alone, bar such dismissal, provided the remedy in the alternate forum is not so clearly inadequate as to amount to no remedy at all. Essentially, "the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster,* supra, at 527 [67 S.Ct. 828, 91 L.Ed. 1067].

{¶ 25} In the instant case, the trial court's March 31, 2005 judgment for Prouse finds that Prouse "brings suit in Ohio where the Parma property is situated along with * * * various other chattels which, to the information of Plaintiff, constitute the only significant assets upon which to execute and pay a judgment obtained against defendants." This weighs in favor of the *Chambers* factor that "enforceability of a judgment if one is obtained" should be taken into consideration. In addition, we note that the sources of proof in this case lie substantially within the parties, and the court found that "the fugitive status of [DiMarco] did not make him unavailable to appear as a matter of law." These facts weigh in favor of the ease of access to sources of proof and the availability of a witness.

{¶ 26} In Prouse's complaint, there are allegations of breach of contract, fraud, and fraudulent transfer of real property. The alleged fraudulent transfer took place and involved real property situated in Cuyahoga County. Additionally, Prouse attorneys traveled to Ohio and New York, where they interviewed witnesses, took photographs, and defended DiMarco against extradition to the United States. These facts weigh in favor of the public-interest factor to have "localized controversies decided at home."

{¶ 27} Accordingly, given that the subject of one of the causes of action is Ohio real property, and Prouse's understanding that this property is crucial to the enforceability of judgment, the court did not err by denying DiMarco's request for transfer or dismissal, pursuant to the doctrine of forum non conveniens. DiMarco's second assignment of error is without merit.

## IV

{¶ 28} In his third assignment of error, DiMarco argues that he was "denied due process of law when the court refused to allow the taking of [his] deposition to be used at the trial of this case."

{¶ 29} On March 10, 2004, Yum filed a motion to have DiMarco's deposition taken by telephone for use at the upcoming trial. It is undisputed that this request was made after the discovery deadline. We review a trial court's discovery rulings under an abuse-of-discretion standard. *Tracy v. Merrell Dow Pharmaceuticals* (1991), 58 Ohio St.3d 147, 569 N.E.2d 875. Furthermore, the relevant inquiry regarding deposition admissibility is "whether the testimony itself may be offered, and for that it must meet the requirements of Civ.R. 32."

*Fitzwater v. Speco Corp.* (Oct. 26, 1992), Clark App. Nos. 2916 and 2919, 1992 WL 302444. On March 17, 2004, the court denied the motion to have DiMarco's deposition taken, stating that DiMarco's "wrongdoing appears to have made him unavailable and hence he does not qualify as an unavailable declarant."

{¶ 30} DiMarco argues that he was not available for trial "due to extraordinary circumstances * * * engineered by plaintiff," specifically that Prouse knew he could not enter the United States without being arrested and, therefore, he would not appear at the trial. Accordingly, DiMarco argues, it was "unfair" for the court to deny his request for deposition. Unfortunately, the law does not support DiMarco's position.

{¶ 31} DiMarco argues that Civ.R. 32(A)(3)(c) and (d) apply to his situation, and they state as follows: "The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: * * * (c) that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment; or (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena."

{¶ 32} However, the record shows that DiMarco was released on bond from a Canadian immigration detention center at the time he filed his motion; therefore, he was not available to testify at trial because of imprisonment. Furthermore, nothing was stopping DiMarco from appearing in Ohio, by his own volition or by subpoena, other than his fear of extradition. We find that Civ.R. 32(A)(3)(b) is better suited to DiMarco's situation, and it states that a witness's deposition may be introduced at trial if the court finds "that the witness * * * resides outside of the county in which the action is pending unless it appears that the absence of the witness was procured by the party offering the deposition."

{¶ 33} The defendants, DiMarco and Yum, are the parties attempting to offer DiMarco's deposition, and DiMarco's "absence" is because he is a fugitive evading United States law. Under Civ.R. 32(A)(3)(b), DiMarco's deposition could not have been offered at trial; thus, it was within the trial court's discretion to deny the request to take his deposition. DiMarco's third assignment of error is overruled.

V

{¶ 34} In his fourth assignment of error, DiMarco argues that he was "denied due process of law when the court entered judgment in favor of plaintiff where plaintiff failed to comply with the applicable Canadian law concerning recovery of attorney fees." Specifically, DiMarco argues that Section 2(1), Chapter S.15, Rev.Stat. of Ontario (1990), which is part of the Canadian Solicitor's Act and governs the practice and procedures of lawyers, applies to his case.

Section 2(1) states that solicitors shall deliver their bill one month before bringing action for costs.

{¶ 35} In its March 31, 2005 decision, the court stated that pursuant to *Erie R.R. v. Tompkins* (1938), 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, Ohio procedural law and Ontario substantive law apply to the breach-of-contract and fraud claims. Although Prouse's breach-of-contract claim is an "action for costs," Section 2(1) is procedural in nature and does not apply to the instant case. Black's Law Dictionary (7th Ed.1999) 1221 defines "procedural law" as "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves." Ensuring that a client has notice of a proper invoice is a step that a Canadian solicitor must take before bringing an action for fees in a Canadian court. DiMarco's fourth assignment of error is without merit.

## VI

{¶ 36} The fifth and sixth assignments of error only apply to Yum, and given our disposition of the first assignment of error, which concluded that the trial court had no personal jurisdiction over Yum, these assignments of error are made moot pursuant to App.R. 12(A)(1)(c).

## VII

{¶ 37} In DiMarco's seventh assignment of error, he argues that "the court erred in awarding a personal judgment against [him] for breach of contract." Specifically, DiMarco argues that there was insufficient evidence regarding the terms of the agreement for legal services between DiMarco/Yum and Prouse. DiMarco does not dispute owing money to Prouse. Rather, he disputes the amount by arguing that the parties agreed to a flat fee. Prouse, on the other hand, argues that the services were being billed on an hourly basis. The court awarded a $206,342.97 judgment to Prouse, finding Prouse's evidence more credible than DiMarco's.

{¶ 38} First, the court noted that "Ontario law permits a contract for the provision of legal services to be performed even in the absence of a written agreement and such services can be contracted to by other than the direct recipient of the services." See *Roach, Schwartz & Assoc. v. Pinnock* (Ontario, Mar. 25, 2004), Sup.Ct.Justice No. 02–CT–63186, 2004 CarswellOnt 1159; *Re Solicitors* (Ontario, July 24, 1978), 1978 CarswellOnt 409.

{¶ 39} The court heard testimony from a solicitor at Prouse who was present at meetings with both DiMarco and Yum regarding the specifics of retaining Prouse as legal counsel. Prouse also presented expert-witness testimony regarding the

reasonableness of Prouse's fees and representation of DiMarco and Yum. In addition, the court heard the testimony of defense witnesses, including Yum, whom the court found "simply not credible." The court further found that DiMarco and Yum agreed to pay Prouse "at the customary hourly rates of the lawyers providing services plus disbursements * * *. In the absence of any evidence that the services, the hours, the disbursements, or the rates claimed are not as testified by the witnesses for plaintiff, there is no basis upon which to find that any other measure of damages should be awarded. There was no credible evidence offered by the defendants which in any way challenged plaintiff's asserted financial arrangement, the quality or performance of services or the entitlement to the fees claimed."

{¶ 40} The above evidence is sufficient to establish a breach-of-contract claim and determine the amount in dispute. DiMarco's seventh assignment of error is overruled.

## VIII

{¶ 41} In his eighth assignment of error, DiMarco argues that "the court erred in ruling that the transfer of the property from [DiMarco] to [Yum] constituted a fraudulent transfer." Specifically, DiMarco argues that there was no evidentiary support for this claim.

{¶ 42} R.C. 1336.04(A) provides:

A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor;

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:

(a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;

(b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

{¶ 43} The ultimate burden of proof rests upon the party seeking to set aside the alleged fraudulent conveyance. *Stein v. Brown* (1985), 18 Ohio St.3d 305, 308, 18 OBR 352, 480 N.E.2d 1121; *Baker & Sons Equip. Co. v. GSO Equip. Leasing, Inc.* (1993), 87 Ohio App.3d 644, 651, 622 N.E.2d 1113. In determining actual intent, R.C. 1336.04(B) lists several statutory factors, termed "badges of fraud,"

that a court considers in determining whether an inference of fraud exists. If the party alleging fraud is able to demonstrate a sufficient number of badges, the burden of proof then shifts to the defendant to prove that the transfer was not fraudulent; however, if the defendant can put forth evidence that the transfer was for reasonably equivalent value, then there exists a defense to a prima facie case of actual intent to defraud pursuant to R.C. 1336.04(A)(1). *Baker* at 651, 622 N.E.2d 1113.

{¶ 44} Those "badges" include:

(1) Whether the transfer or obligation was to an insider;

(2) Whether the debtor retained possession or control of the property transferred after the transfer;

(3) Whether the transfer or obligation was disclosed or concealed;

(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

(5) Whether the transfer was of substantially all of the assets of the debtor;

(6) Whether the debtor absconded;

(7) Whether the debtor removed or concealed assets;

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

R.C. 1336.04(B).

{¶ 45} In the instant case, the trial court found that the conveyance of the Parma property from DiMarco to Yum constituted a fraudulent conveyance. Although the trial court, in support of its conclusion, analyzed R.C. 1336.04(A)(2), a better analysis could be made under subsection (A)(1).

{¶ 46} The evidence shows that at least eight of the 11 badges support the conclusion that the conveyance was fraudulent. The property was transferred to an insider, his wife, without consideration, on June 15, 1999, and recorded on July 27. However, DiMarco still referred to this house as being "his," thus retaining possession or control over the property. There was testimony that the property was transferred because DiMarco owed over $100,000 in back child support to his ex-wife and he wanted to protect the house from being attached. Furthermore,

DiMarco learned that he was the subject of an SEC investigation in late July 1999. Finally, he fled the United States to Canada to avoid prosecution for SEC violations.

{¶ 47} Therefore, an inference of fraud exists. DiMarco has failed to set forth any evidence demonstrating that the conveyance was not fraudulent except for the assertion that the transfer was done because he was having various medical problems. Accordingly, there was sufficient evidence to suggest that the conveyance was done fraudulently.

{¶ 48} DiMarco argues that Prouse was not a creditor nor was he a debtor when the transfer was made. A "claim" means a "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." R.C. 1336.01(C). A "creditor" means a person who has a claim, R.C. 1336.01(D), and a "debtor" is a person who is liable on a claim. R.C. 1336.01(F). However, Prouse did not have to be a creditor when the transfer was done. Rather, anyone who now has a claim against a party and alleges that the transfer was done fraudulently to elude other creditors or obligations may step in and declare that the transfer was done fraudulently. The plain language of R.C. 1336.04 clearly provides that the claim of the creditor can arise after the transfer of the property.

{¶ 49} Here, there was sufficient evidence to suggest that DiMarco was eluding child support and possible SEC penalties. Thus, the transfer was done to defraud other creditors. Prouse can now argue that the transfer was fraudulent. The trial court did not err in finding that DiMarco fraudulently conveyed the property to Yum and setting aside the transfer. DiMarco's eighth assignment of error is overruled.

## IX

{¶ 50} In his ninth and final assignment of error, DiMarco argues that he was "denied due process of law when the court allowed an unregistered entity who was doing business in Ohio to access the Ohio court system." Specifically, DiMarco argues that Prouse admitted to traveling to Ohio to conduct interviews and take pictures and that this amounts to "transacting business" in Ohio as contemplated in R.C. 1705.58 and 1777.04. DiMarco further argues that a corporation which transacts business in Ohio must register with the state before maintaining a legal action or proceeding in an Ohio court.

{¶ 51} We first note that DiMarco did not raise this issue in the trial court; therefore, we need not consider this assignment of error. See *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the

syllabus (holding that an "appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court").

{¶ 52} We will, however, in the interests of justice, review this issue for error. We conclude that there is insufficient evidence in the record to show that Prouse was "conducting business" within the state of Ohio. A Prouse attorney traveled to Ohio on occasion to talk to witnesses and view evidence. Prouse argues that "[t]hese were isolated acts performed during the scope of [its] Canadian representation of [DiMarco]." We agree. See *Short Films Syndicate Co. v. Std. Film Serv. Co.* (1931), 39 Ohio App. 79, 82, 176 N.E. 893 (holding that "the question as to what constitutes 'doing business in this state' * * * is not a question of law, but, instead, is a question of fact").

{¶ 53} DiMarco's ninth and final assignment of error is overruled.

{¶ 54} The judgment is affirmed in part and reversed in part, and the cause is remanded to the lower court for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

COONEY, P.J., and KILBANE, J., concur.